**Edna Jeanne MAUK (Now Molton), Appellant,**

v.

**Clyde Franklin MAUK, Appellee.**

**No. 92–CA–2347–MR.**

Court of Appeals of Kentucky.

March 4, 1994.

Phillip B. Leslie, McBrayer, McGinnis, Leslie & Kirkland, Greenup, for appellant.

W. Jeffrey Scott, Grayson, for appellee.

Before GUDGEL, HOWERTON and HUDDLESTON, JJ.

## OPINION

HOWERTON, Judge.

Edna Mauk Molton appeals from an order of the Carter Circuit Court dated September 9, 1992, overruling her exceptions to and affirming a report by the domestic relations commissioner. The commissioner found that Molton's motion for a $25,200 child support arrearage award was not well-founded. Based upon our review of the record and the applicable law, we affirm.

In December 1969, Edna Mauk (now Molton) and Clyde Franklin Mauk were divorced. The parties had three minor sons for whom Clyde Mauk was ordered to pay a total of $150 per month child support. Subsequently, Mr. Mauk became delinquent in his child support payments due to employment difficulties. Ms. Molton instituted a Uniform Reciprocal Enforcement Support Act (URESA) action in Ohio, Mauk's state of residence, to enforce the trial court's support order. During this proceeding, Mauk's child support obligation was reduced to $120 per month and he was ordered to make his child support payments through an Ohio agency which was to forward these payments to the Carter Circuit Clerk for presentation to Molton. It appears from the record below that Mauk made these child support payments regularly for a time but later ceased making them.

In the fall of 1974, Mauk received a letter from an attorney, George Hogg, requesting his signature on a Consent to Adoption and Waiver form in order that Molton's new husband could adopt the three young boys. Mauk ignored this request. Another letter and consent/waiver form were mailed by this same lawyer to Mauk in September 1975. This time, Mauk executed the forms and returned them to Attorney Hogg. Mauk has admitted that from that time forward he did not pay any child support and he had no further contact with his children. Mauk subsequently learned from some of his family members that the children were going by the surname of Molton and that their own children, Mauk's grandchildren, were born with the Molton name.

On October 28, 1990, 15 years to the month after Mauk signed the consent/waiver, Ms. Molton, now divorced from Molton, instituted this proceeding against Mauk for $25,200 in unpaid child support. Mauk's defense to this action was that the parties had modified their agreement with regard to child support to the effect that none was required of him once he executed and returned the consent to adopt/waiver form. The trial court agreed with Mauk, finding that since the parties had modified their agreement, no child support, past or future, was owed by Mauk. Mauk also raised the statute of limitations as a defense.

Molton raises three issues on appeal: (1) the court erred as there was no proven agreement to modify the child support order; (2) evidence concerning the Ohio URESA proceeding was improperly introduced because the records were not certified; and (3) Mauk's parental rights were not terminated when he executed the adoption consent form, so his obligation to support his children likewise was not extinguished but continued.

In adoption of the commissioner's findings and recommendations, the trial court relied upon *Holmes v. Burke*, Ky., 462 S.W.2d 915 (1971), for authority allowing the parties to modify their agreement regarding child support. While it is true that this jurisdiction does permit such modification, it does not do so unconditionally. Further, we would hasten to restate that caveat found in *Ruby v. Shouse*, Ky., 476 S.W.2d 823, 825 (1972), addressed to those parties who would seek

modification of a court order without first obtaining court approval:

> [You] run at least two very considerable risks: one, the evidence will not convince the court that it has been established with reasonable certainty that the agreement was made, and two, that the court may disapprove the agreement because it is not equitable or fair to the affected child under the circumstances even though the modification agreement is clearly established.

■ In *Whicker v. Whicker*, Ky.App., 711 S.W.2d 857 (1986), this Court held that agreements modifying child support obligations are enforceable provided "(1) such agreements may be proved with reasonable certainty, and (2) the court finds that the agreement is fair and equitable under the circumstances." *Id.* at 859. *See also Arnold v. Arnold*, Ky., 825 S.W.2d 621 (1992). We further stated therein that in order to enforce such modified agreements, "a court must find that modification might reasonably have been granted, had a proper motion to modify been brought before the court pursuant to KRS 403.250 at the time such oral modification was originally agreed to by the parties." *Id.* Any agreement which affects the best interest of a child is always subject to the approval of the court having proper jurisdiction of the parties. *Davis v. Davis*, Ky., 431 S.W.2d 866, 867 (1968).

We turn now to an examination of the purported agreement between Molton and Mauk. It is undisputed that Mr. Mauk was *twice* presented with consent to adopt/waiver forms from an attorney for the purpose of permitting Ms. Molton's new husband to adopt the three Mauk children. Only after the second attempt by Attorney Hogg did Mauk ever execute and return the forms, which occurred in October 1975. At that time, Mauk believed himself relieved of the obligation to support the three children because he believed they were being adopted by Mr. Molton. Mr. Mauk never questioned whether the adoption had occurred—he assumed it had when he learned his children were going by the name of Molton and, in later years, that his grandchildren were known by the surname of Molton. Only several years after his children had passed the age of majority did he learn that no adoption ever took place, but that only a legal name change had occurred. This testimony of Mauk is undisputed by Molton.

Mauk further testified that he and Molton's new husband did not get along; that visitation with his children was made increasingly difficult; and that Molton ultimately told him he didn't want another penny of Mauk's money. It was after these problems occurred that Mauk received the adoption/waiver forms. Ms. Molton does not dispute this testimony but does disclaim any knowledge of these exchanges between Mauk and her new husband.

Similarly, Ms. Molton disclaims any knowledge whatsoever that Mr. Molton had been to see a lawyer about adopting her three sons. However, she does admit that she and Molton had discussed it before. Ordinarily, this one point would be a source of concern for the court and a point which might defeat a finding based on reasonable certainty that an agreement existed between these parties. However, the trial court had obvious grave doubts concerning Ms. Mauk's veracity and, in fact, directly confronted her with these doubts. The fact that the children's last name was legally changed to Molton (which would have required Ms. Molton's approval or joinder), coupled with several incidents of incredible testimony received from Ms. Molton (with which we will not unduly burden this opinion), provided a reasonable basis for the trial court to find that she did in fact have knowledge that consent/waiver forms were sent to Mauk. It was also reasonable for the trial court to find that if Ms. Molton wanted Mauk to give up all of his legal rights to his three children, she either anticipated or should have known that his legal support obligation would likewise be extinguished.

■ We conclude that there was adequate and substantial proof presented to the trial court to enable it to find with reasonable certainty that a modified agreement existed as to future support payments, that such agreement was fair and equitable to the three children, since adoption of the children at that time was contemplated by Ms. Molton and her new husband, and that had Mr. Mauk filed a proper motion *at that time* and

presented the court with an executed consent form properly delivered to Ms. Molton (through Attorney Hogg), the trial court probably would have granted the requested modification.

We acknowledge the fact that existence of this agreement rests in substantial part upon the credibility of Ms. Molton's denial. However, the trial court found her testimony to be incredible. Judge Long essentially told Ms. Molton that he did not believe her story. Veracity of a witness is judged by the trier of fact, and we cannot substitute our view as to credibility.

Molton's argument that Mauk's parental rights were never terminated, thus his support obligation never ceased, is without merit. The trial court reasonably found that Molton induced Mauk's cessation of contact and support payments. The fact that Molton and her husband effected a legal name change instead and decided to forego the adoption of the three children is not Mauk's fault. Molton cannot have it both ways. She admittedly never contacted Mauk to inform him that there would be no adoption or that she expected him to resume his support of the children. Further, as stated earlier, it is undisputed that Mauk did not know his children had *not* been adopted by Molton. What Mauk did know was that his children were then, and are to this day, known by the name of Molton. We find that the modified agreement eliminating child support payments due after October 1975 is enforceable, regardless of whether Molton ever proceeded with the adoption as originally contemplated.

■ In *Whicker, supra,* we held that "private agreements are enforceable only *prospectively,* and will not apply to support payments which had already become vested at the time the agreement was made." *Whicker,* 711 S.W.2d at 859. (Emphasis added.) Unpaid child support payments for the maintenance of children become vested when due and courts are without authority to "forgive" vested rights in accrued unpaid maintenance. *Dalton v. Dalton,* Ky., 367 S.W.2d 840, 842 (1963). *See also Stevens v. Stevens,* Ky., 729 S.W.2d 461 (1987), (trial court erred in finding a father was not required to pay past-due child support); *Heisley v. Heisley,* Ky., 676

S.W.2d 477 (1984) (unpaid child support becomes vested when due and is a fixed/liquidated debt); *Stewart v. Raikes,* Ky., 627 S.W.2d 586 (1982) (court has no power to modify decree as to past-due child support); and *Whitby v. Whitby,* 306 Ky. 355, 208 S.W.2d 68 (1948).

Molton further claims that the trial court erred in relieving Mauk of his obligation to pay the arrearages accrued prior to October 1975. Along with this issue, she complains about Mauk's proof of a reduction from $150 to $120 per month, and of the number of payments he actually made. We must conclude that each of these arguments is now moot.

■ Although the court may have erred by relieving pre-October accrued support based on the adoption agreement, it nevertheless reached the right result because all payments which had accrued and remained unpaid prior to October 1975 became barred by the 15-year limitation (KRS 413.090) as this action to collect was not filed until October 28, 1990. Mauk raised a valid defense against the old debt.

The order of the Carter Circuit Court is affirmed.

All concur.