Sheri Hoskins GIBSON, Appellant,

v.

Douglas A. GIBSON, Appellee.

Nos. 2004–CA–000313–MR,
2004–CA–001924–MR.

Court of Appeals of Kentucky.

Dec. 22, 2006.

Thomas K. Stone, Louisville, KY, for appellant.

Brian Schuette, James Blake Hornal, Bowling Green, KY, for appellee.

Before JOHNSON and TAYLOR, Judges; HUDDLESTON,[1] Senior Judge.

## OPINION

JOHNSON, Judge.

Sheri Hoskins Gibson has appealed, separately, two orders of the Oldham Circuit Court, respectively entered on January 15, 2004, and August 18, 2004, in which the trial court modified the visitation rights of her former husband, Douglas A. Gibson, with the parties' two minor children, reduced Doug's child support and his medical reimbursement arrearages, and failed to award interest on child support that was vested and remained unpaid. Having concluded that there is no relief to be granted on the January 15, 2004, order, and that the trial court did not abuse its discretion as to the medical reimbursement arrearages, we affirm in part. Having concluded that the trial court lacked personal jurisdiction to reduce Doug's child support, we reverse in part. Having further concluded that the trial court abused its discretion in failing to enter a judgment on Doug's child support arrearages, including interest on the arrearages, we vacate in part and remand.

Sheri and Doug were divorced by the Oldham Circuit Court by a decree entered on March 31, 1999. Prior to entry of the decree, the parties orally entered into a separation agreement which was read into the record at the time the March 31, 1999, decree was entered, but not reduced to writing at that time. However, it is undisputed that the separation agreement provided that Sheri and the parties' two minor children would be living in North Carolina

---

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

after the divorce. By agreed order entered on March 8, 1999, the parties agreed to a visitation schedule for Doug and the children, which was incorporated into the decree.[2] Pursuant to the decree, Doug was to pay $1,500.00 per month in child support and he was to be responsible for all of the childrens' uninsured medical expenses. Doug paid the child support as agreed from March 1999 until February 2002.

Sheri moved to North Carolina with the children during 1999. While the question of whether she ever changed her residence back to Kentucky is disputed, it is conceded that in July 2003 she returned to Kentucky and stayed here until late September or early October 2003. Sheri's position is that her relocation to Kentucky was only temporary so she could take care of her ailing mother and seek a potential job opportunity "to determine if in fact, she wished to return to Kentucky."

No further action was taken in the case until Doug filed a motion with the trial court on September 30, 2003, requesting the trial court to modify the previous visitation agreement and to "issue a rule against Sheri to show cause why definite periods of visitation should not be established for [Doug] to have visitation with the parties' minor children." At the time Doug filed this motion, he resided in Indiana. Sheri did not receive notice of either the motion or the hearing held on October 2, 2003. The trial court entered an order on October 2, 2003, which set a specific one-week visitation schedule with the minor children from October 2, 2003, through October 9, 2003, and allowed Doug to take the children to East End Pediatrics

during this visitation period. Contrary to what Sheri has stated in her brief, the trial court also passed the remaining matters until October 10, 2003, at which time Sheri was to appear with the children so they could be interviewed.

Sheri apparently received notice of this order and filed a motion on October 7, 2003, asking the trial court to remove the matter from its docket for lack of jurisdiction because none of the parties resided in Kentucky.[3] She also filed a motion at that time asking that the parties' oral separation agreement, previously read into the record, be reduced to writing. The trial court held the previously scheduled hearing on October 10, 2003, but Sheri and the children failed to appear. The trial court then entered an order on October 10, 2003, finding Sheri in contempt and stating that for her to avoid arrest, she must return the children to Oldham County and ensure they attend Crestwood Elementary, not medicate the children without a doctor's specification, grant certain visitation with the children as set out by the trial court, and report to court with the children on October 17, 2003.

On October 14, 2003, the trial court entered an order denying Sheri's motion to dismiss the action based upon lack of jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). The trial court based its denial of dismissal on the fact that Sheri "relocated to [Kentucky] in July [2003], has resided with her parents since that time, and the children have been enrolled at Crestwood Elementary for the 2003–2004 school year." The order further noted that "[a]t the termination of the hearing, the [trial] court checked with

---

**2.** The original separation agreement did not provide a visitation schedule.

**3.** Throughout this proceeding the parties refer to "subject-matter" jurisdiction, while we be-

lieve the correct concept is "in personam" or "personal" jurisdiction. *Cox v. Cox,* 170 S.W.3d 389 (Ky.2005).

Crestwood Elementary and was advised that the children have not been withdrawn from school."

Sheri then filed a motion on October 14, 2003, to have the trial court's October 2, 2003, and October 3, 2003, orders set aside. A hearing was held on October 17, 2003, and subsequent thereto, the parties reached an agreement which the trial court approved in an order entered on October 22, 2003. The order allowed Sheri and the children to return to North Carolina[4] and allowed the children to withdraw from enrollment at Crestwood Elementary School and to enter school at North Raleigh Christian Academy in North Carolina. The order also required the parties to resolve Doug's visitation with the children based upon their new school calendar. The trial court, on that same date, also entered, in writing, the separation agreement that the parties agreed to on March 31, 1999, and incorporated it into an amended decree.

On October 22, 2003, Doug filed a motion to decrease his child support obligation as set by the Separation Agreement. Sheri filed a response on October 30, 2003, and moved for a common-law judgment against Doug for child support and medical reimbursement arrearages and for dismissal of Doug's motion based on lack of jurisdiction.

After the hearing on November 4, 2003, on the issue of visitation, the trial court entered an order on November 14, 2003, establishing visitation[5] and also stating that it retained jurisdiction over the case regarding child support, but that it would lose jurisdiction regarding custody and vis-

itation six months post-September 2003. Then, on January 13, 2004, the trial court entered an order stating that the trial court would consult with the circuit court in Wake County, North Carolina to determine which court had "appropriate jurisdiction at the present time." On January 15, 2004, the trial court entered an order stating as follows:

> This matter came before the Court and was addressed by Court order entered January 13, 2004. In that [o]rder, the Court indicated that it would contact Judge Stubbs to make a determination as to appropriate custodial jurisdiction for the present time.
>
> After contacting Judge Alice Stubbs by telephone conference on January 12, 2004, the judges agreed that this Court would retain jurisdiction for custody and visitation purposes until March 10, 2004[,] which represents the expiration of the six (6) month term after Sheri['s] removal from the state of Kentucky.
>
> . . . .
>
> As such, this Court retains jurisdiction for matters of custody and visitation until March 10, 2004.

Sheri then appealed this order.

After several continuances, a hearing was held on April 6, 2004, on Doug's motion to modify child support and Sheri's motion for a common-law judgment on child support and medical reimbursement arrearages. It appears from the record that the continuances were due to Doug's failure to provide documents requested by

---

4. This order specifically states that Sheri and the children had resided in North Carolina since 1999.

5. Sheri describes this order as a "modification" of the parties' Separation Agreement regarding visitation. Doug argues to the con-

trary that the trial court's order was an enforcement of the current agreement and order and only provided for the physical transfer of the children in accordance with the separation agreement's visitation provision.

Sheri through the discovery process.[6] On August 18, 2004, the trial court, after hearing testimony and reviewing numerous exhibits placed in the record, entered its findings of fact and conclusions of law regarding the amount of child support and medical arrearages due from Doug to Sheri, as well as modifying downward Doug's child support obligation. This second appeal followed.[7]

Sheri raises five issues in her brief. The first issue pertains to her appeal of the trial court's January 15, 2004, order. The remaining four issues pertain to her appeal of the trial court's August 18, 2004, order. Sheri argues that the trial court abused its discretion in entering its January 15, 2004, order because it did not have jurisdiction under the UCCJA (now the Uniform Child Custody Jurisdiction and Enforcement Act) (UCCJEA) to modify a visitation order when none of the parties resided in Kentucky.[8] It should be pointed out that prior to the trial court's order of January 15, 2004, it had entered orders regarding custody and visitation on October 2, 2003, October 10, 2003, October 22, 2003, October 24, 2003, November 17, 2003, and January 13, 2004, none of which Sheri appealed. However, in Sheri's brief she argues "all of the orders from September 30, 2003, forward in regard to visitation are null and void for a lack of subject matter jurisdiction and must be set aside and vacated." While none of the above-mentioned orders were final and appeal-

able at the time they were entered, by the time Sheri filed her notices of appeal in the consolidated cases they had become final and appealable. Further, in reviewing the orders that Sheri failed to appeal and failed to reference in her pre-hearing statements, there does not appear to be any matter which currently affects the parties or the children. Because those orders were not timely appealed, we cannot review any order prior to the January 15, 2004, order.

Thus, on the issues of custody and visitation, we address only the January 15, 2004, order. In that order the trial court "retained jurisdiction" for matters of custody from January 14, 2004, the date of the order, until March 10, 2004. A review of the record between January 14, 2004, and March 10, 2004, indicates that the trial court exercised jurisdiction over visitation and custody matters in an order entered on February 25, 2004. After this order, there was no additional order of record prior to or on March 10, 2004. Thus, the period of time which the trial court retained jurisdiction has passed, with no lasting effects; and Sheri has failed to identify any relief we can grant her on this claim. Thus, this issue is now moot and it is not necessary that we discuss it any further.

Sheri's remaining issues concern the trial court's order entered on August 18, 2004. First, Sheri argues that the trial court had no jurisdiction to hear Doug's motion for a reduction of child support

---

6. According to an order entered by the trial court on February 25, 2004, the trial court found that as of that date, Doug had failed to comply with prior discovery orders to provide information regarding his 2001, 2002, and 2003 income and expenses. The trial court in this order stated that "failure to comply may result in a dismissal of his request for a reduction in child support."

7. Sheri's appeals were consolidated by order of this Court entered on June 27, 2005, i.e.,

Case No. 2004–CA–000313–MR and Case No. 2004–CA–001924–MR. Therefore, the issues in the two appeals will be addressed in one Opinion.

8. Between January 14, 2004, and March 10, 2004, the UCCJA, as set out in KRS 403.400–403.620 governed custody determinations. As of July 13, 2004, the UCCJA was repealed and superseded by the UCCJEA, as set out in KRS 403.800–880.

filed on October 22, 2003, because Doug resided in Indiana and Sheri and the children resided in North Carolina.

We begin our analysis with the Uniform Interstate Family Support Act (UIFSA) which became effective in Kentucky on January 1, 1998. KRS 407.5205 *et seq.*, which is the controlling statute on this issue, states as follows:

(1) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:

    (a) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued;[9] or

    (b) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

■■■ In replacing the Uniform Reciprocal Enforcement of Support Act (URE-

SA), the UIFSA brought changes to child support enforcement "by expanding personal jurisdiction over non-resident obligors ... and eventually creating a 'single-order' system that applies nationally" [footnote omitted].[10] "The primary purpose of [the] UIFSA was to eliminate multiple and inconsistent support orders by establishing a principle of having only one controlling order in effect at any one time. This principle was implemented by a definitional concept called 'continuing, exclusive jurisdiction,' under which the state that issues the support order (the issuing state) retains exclusive jurisdiction over the order, until specified conditions occur which provide a basis for jurisdiction in another state."[11] "Jurisdiction, a term with multiple meanings, primarily indicates the power to adjudicate" [citation omitted].[12] "Personal jurisdiction is required for child support orders to be enforceable because such orders involve the imposition of a personal obligation to pay money."[13]

In this case, based upon the definitions under KRS 407.5101, and the facts as set

---

**9.** While both sides spend a great deal of time in their briefs arguing whether Sheri's three-month return to Kentucky from July 2003 to October 2003 changed the residency of the children from North Carolina back to Kentucky, this issue is moot. The trial court, in an order entered on October 22, 2003, prior to entry of either order on appeal to this Court, stated, "[i]t was agreed that [Sheri] and the parties' minor children shall be allowed to permanently return to North Carolina, where they have resided since 1999." There is no indication in the record that Doug challenged this order by filing a motion to alter, amend, or vacate; and this finding that Sheri and the children resided in North Carolina from 1999 to October 2003 is supported by substantial evidence and is not clearly erroneous. Doug argues extensively in his brief that Sheri and the children were residing in Kentucky at the time he initiated the proceeding to modify visitation in late September 2003. However, that was not the finding of

the trial court in its October 22, 2003, order, despite somewhat conflicting language in its October 14, 2003, order. Therefore, it has been established that the state of residence of Sheri and the children has been North Carolina since 1999 and during all times relevant to this appeal. We will proceed with a jurisdictional analysis from the standpoint that neither of the parties, nor their children, were residents of Kentucky at the time Doug filed his motion for a modification of child support.

**10.** Graham and Keller, *Kentucky Practice*, § 14.54 (Supp.2005).

**11.** *Jurado v. Brashear*, 782 So.2d 575, 578 (La.2001).

**12.** *Id.* at 577.

**13.** *Id.* at 577, n. 2.

forth herein, KRS 407.5205(1)(a) is not applicable as neither of the parents (obligor nor obligee), nor the children still resided in Kentucky at the relevant times of this case. Further, KRS 407.5205(1)(b) does not apply because the parties have not filed a written consent for another state to assume continuing, exclusive jurisdiction over this matter.

Since sections (1)(a) and (1)(b) of KRS 407.5205 do not provide specifically for situations as in this case, and since we have found no guidance from Kentucky's statutes and case law, this issue appears to be one of first impression in Kentucky, and we must look to our sister states.[14] In the Kansas case of *In Re: the Marriage of Abplanalp*,[15] the statute and the significant facts under review were very similar to those in this case. The parties were divorced in Kansas and Kansas was the issuing state of the effective child support order over the parties' minor children. Subsequently, the mother and the minor children moved to Nebraska and the father moved to Oklahoma. Three years after the divorce, the father filed a motion to modify his child support in the Kansas court and prior to the hearing the mother filed a motion to continue the hearing and for the Kansas court to issue an order registering the child support order in Nebraska. The Kansas court denied the mother's motion and granted the father's

modification motion and decreased the child support.

In reversing the trial court, the Court of Appeals of Kansas stated that "once the issuing state has lost continuing, exclusive jurisdiction, the obligee may seek modification of the child support order in the obligor's state of residence or the obligor may seek a modification in the obligee's state of residence" [citations omitted].[16] The Court further stated as follows:

> The purpose of UIFSA is to prevent a party from obtaining a local advantage by requiring that the moving party must be a nonresident of the state where the motion is filed. Also, the state where the action is brought must have personal jurisdiction over the nonmoving party. Once [the issuing state] has lost continuing, exclusive jurisdiction and a motion to modify child support is filed, upon proper motion, the order for child support should be forwarded to an appropriate tribunal, *e.g.* to a state: (1) where the movant is a nonresident and (2) that has jurisdiction over the nonmoving party. . . . If the parties and child no longer reside in [the issuing state], except for modification by agreement, the party petitioning to modify an existing child support order must submit himself or herself to the jurisdiction of the state

**14.** *See Jurado*, 782 So.2d at 580 (stating that "[t]he comments by the drafters of the Uniform Act clearly show that the issuing court cannot *modify* a child support order after the obligor, obligee and child all leave the state permanently. Pointing to Section 205 of the Model Act, which provides that the court issuing a support order retains continuing, exclusive jurisdiction over the order '[a]s long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued,' the drafters reasoned that the converse also applies: [I]f all of the relevant persons-the obligor, the individual obligee, and the child-have perma-

nently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to *modify*. Unif. Interstate Family Support Act § 205 cmt., 9 U.L.A. 285–86 (1996)" [emphasis added] ). *See also Zaabel v. Konetski*, 209 Ill.2d 127, 282 Ill.Dec. 748, 807 N.E.2d 372, (2004); and *Hopkins v. Browning*, 186 Misc.2d 693, 719 N.Y.S.2d 839 (N.Y.Fam.Ct.2000).

**15.** 27 Kan.App.2d 833, 7 P.3d 1269 (2000).

**16.** *Abplanalp*, 7 P.3d at 1271.

where the nonmoving party resides [citations omitted].[17]

A few years later, the Kansas Court of Appeals revisited this issue in the case of *In Re: the Marriage of Myers*,[18] and upheld the holding in *Abplanalp*. In *Myers*, the statute was essentially the same and the significant facts were similar, except the mother in *Myers* did not request a transfer of the motion to the court of an appropriate state. The lower court reached the following decision:

"Is it up to this court to decide what the appropriate tribunal is? Should this court just dismiss the support motion out of hand, which appears to be the respondent's position herein, and leave the parties and the child in limbo with no court then having the child support matter before it? Neither of these options seems particularly appropriate. Therefore, until such time as an appropriate motion to transfer is filed, the Court shall retain jurisdiction and respondent's motion in this regard is denied." [19]

The Court of Appeals reversed the lower court, upheld the holding of *Abplanalp*, and explained the resolution of the issue as follows:

The parties would not have been "in limbo" if the district court had dismissed the case for lack of jurisdiction. As the Louisiana Supreme Court recently said:

"Significantly, there is no limbo situation, as feared by the court of appeal, when both parents and the child move out of the issuing state. The court of the issuing state retains jurisdiction to *enforce* its order, but not to *modify* the order. If either party desires modification, the burden is on that party to take appropriate action in the appropriate state. When the obligor wishes to reduce his or her obligation, the reduction must be sought in the obligee's state of residence; when the obligee wishes an increase in support, that increase must be sought in the obligor's state of residence." [20]

We find the holdings of the Kansas Court of Appeals in both *Abplanalp* and *Myers* persuasive. Section (b) of KRS 407.5205(1) cannot be read as the alternative to section (a) when there is no continuing, exclusive jurisdiction of the issuing state under section (a). " 'However logical this analysis may seem, it leads to an illogical result.' " [21]

17. *Abplanalp*, 7 P.3d at 1271.

18. 30 Kan.App.2d 1223, 56 P.3d 1286 (2002).

19. *Myers*, 56 P.3d at 1288.

20. *Myers*, 56 P.3d at 1291 (*quoting Jurado*, 782 So.2d at 580). The Court in *Myers* went on to state that if none of the parties or their children reside in the issuing state, any agreement that they reach under section (b) of the statute will not "re-bestow subject matter jurisdiction on the [issuing state] court by agreement." *Id.* at 1289. However, we do not reach this issue, as such agreement was not attempted in the case before us.

21. *Myers*, 56 P.3d at 1290 (quoting *Etter v. Etter*, 18 P.3d 1088, 1089–90 (Okla.Civ.App. 2001)). The Kansas Court of Appeals found

that the courts of Louisiana, Oregon, and Texas agreed with its reasoning. *Id.* (*citing Jurado*, 782 So.2d at 580 (noting Louisiana court lost continuing, exclusive jurisdiction to modify child support order after parties and children left state.); *Cohen v. Powers*, 180 Or.App. 409, 43 P.3d 1150 (2002) (noting Alabama court no longer had continuing, exclusive jurisdiction over support order under the UIFSA because neither party resided in Alabama); *In re B.O.G.*, 48 S.W.3d 312, 318, *rev. denied* (Tex.Civ.App.2001) (noting Texas court no longer had jurisdiction to modify the support order under the UIFSA because parties no longer resided in Texas)). *See also Etter, supra;* and *Youssefi v. Youssefi*, 328 N.J.Super. 12, 744 A.2d 662 (2000).

■ Thus, for Kentucky to have continuing, exclusive jurisdiction over the child support order either Doug, Sheri, or the children would have had to remain as a resident of Kentucky. It is undisputed that Doug left Kentucky and became a resident of Indiana, and it was found by the trial court that Sheri and the children left Kentucky and became residents of North Carolina. Accordingly, Kentucky lost jurisdiction over any modification of the child support order, and the burden was on Doug, as the movant, to demonstrate that jurisdiction was re-established in Kentucky. This burden has not been met. Because Kentucky no longer had continuing, exclusive jurisdiction over either of the parties or their children at the time Doug filed his motion to modify child support, Doug's only alternative, as the movant would have been to pursue the matter in North Carolina, where Sheri and the children resided. Therefore, we hold that the circuit court erred as a matter of law in modifying the current child support order and in failing to dismiss Doug's motion pursuant to Sheri's request based on lack of personal jurisdiction. Thus, the order entered on August 18, 2004, is reversed in part.

■ However, we reach a different conclusion on the jurisdiction question as to the issues of enforcing the Oldham Circuit Court's orders on past-due child support and medical expenses. Child support payments become vested when due, so "each installment of child support becomes a lump sum judgment, *unchangeable by the trial court* when it becomes due and is unpaid" [emphasis original].[22] A trial court has no authority to forgive or to retroactively eliminate a past-due child support arrearage.[23] Child support is a statutory duty intended to benefit the children, rather than the parents.[24] The right to child support belongs to the child not the parents.[25]

■ Therefore, the motion Sheri brought before the trial court in this case regarding a common-law judgment for child support arrearages and medical reimbursements was a request for the trial court to enforce its current order regarding child support, not in any way for it to modify the child support order in place. Because of the absence of precedent in this Commonwealth as to child support enforcement jurisdictional issues, we have looked for guidance to our state's high court's decision in *Brighty v. Brighty,*[26] regarding enforcement versus modification of custody/visitation orders.

In *Brighty,* Kentucky had lost jurisdiction to modify the initial custody decree under the UCCJA, but the father argued that because the motion before the trial court did not involve a child custody determination or custody modification, the UCJA did not apply, rather, "the matter before th[e] [c]ourt involve[d] no more and no less than the inherent powers of a trial court to enforce its validly entered orders, and its standing authority to retain enforcement jurisdiction of the same."[27] The Supreme Court agreed with this argument and stated as follows:

**22.** *Price v. Price,* 912 S.W.2d 44, 46 (Ky.1995) (quoting *Stewart v. Raikes,* 627 S.W.2d 586, 589 (Ky.1982)).

**23.** *Id.; Mauk v. Mauk,* 873 S.W.2d 213, 216 (Ky.App.1994).

**24.** *Clay v. Clay,* 707 S.W.2d 352 (Ky.App. 1986).

**25.** *Gaines v. Gaines,* 566 S.W.2d 814 (Ky.App. 1978).

**26.** 883 S.W.2d 494 (Ky.1994).

**27.** *Id.* at 496.

The question of whether there is a distinction between *enforcement jurisdiction* and *modification jurisdiction* is a question of first impression in Kentucky. It is the holding of this Court that a clear difference exists, supported by the law and sound reasons of public policy [emphases original].

. . . .

Where no modification is sought or obtained, courts have consistently held that the UCCJA does not apply to contempt proceedings. The reason is fundamental and makes sense. The UCCJA explicitly applies to "child custody determinations by initial or modification decree." An order for contempt is simply not a custody determination in any way, shape or form [citations omitted].

The distinctive analyses in which a court must engage with respect to issues involved in these two very different proceedings demonstrates the truth of this proposition. Under the UCCJA, the question of whether jurisdiction exists in a particular forum to entertain a motion for a child custody determination, either by initial or modification decree, necessarily involves an evidentiary hearing dedicated to resolution of the issue consistent with the best interest of the child. The jurisdictional principle provided by the Act accords flexibility built around a child's "home state," as well as a measure of uniformity designed to eliminate conflicting decisions on the part of competing state forums.

In sharp contrast, the issue of enforcement jurisdiction is strictly limited to a basic determination of whether a custody order was valid when entered, and can be enforced. In other words, the interests intended to be protected by enactment of the UCCJA, are just not implicated by a trial court's discretion to retain contempt jurisdiction and the ability to enforce its own validly entered orders [citation omitted].

It is important to state clearly that the conclusion set forth by this opinion, that there *is* a significant difference between modification jurisdiction and enforcement jurisdiction with respect to child custody disputes, works no change in existing Kentucky law related to the requirements for jurisdiction over original decree or modification disputes that do fall within the purview of the UCCJA or the PKPA (Parental Kidnapping Prevention Act) [citations omitted].[28]

The Supreme Court's rationale in *Brighty* supports our conclusion that the trial court would have jurisdiction to review Doug's payment of child support and medical expenses under the existing order and to determine arrearages owed pursuant to statute as Sheri's motion was not requesting a new child support order or requesting modification of the existing order and, thus, did not involve issues reviewable under the UIFSA.

■ The parties agreed on March 31, 1999, that Doug would pay child support in the amount of $1,500.00 per month for the benefit of the parties' two minor children, with one-half of the payment to be due on the first and one-half of the payment to be due on the 15th of each month thereafter. Doug quit paying this amount on or around February 2002. On October 31, 2003, Sheri filed a motion for a common-law judgment on arrearages. The trial court stated the following as to the child support arrearages in the August 18, 2004, order:

> *Child support arrears.* The Court reviewed respondent's exhibit 11, which is an arrearage calculation with built-in in-

---

28. *Brighty,* 883 S.W.2d at 496–97.

terest figures, for which [Sheri] claims child support owed is $21,769.41.

The interest appears to be compounded and in addition [Sheri] appears to have charged [Doug] $1500.00 for the full month of November despite the fact that child support is reduced effective November 5, 2004.

The court calculates that [the] amount due from the date [Doug] was last current to November 5, 2003, is $31,750.00 and the amount he paid is $14,100.00 indicating that he owes child support in the amount of $17,650.00. The Court does not accept the interest calculations of [Sheri] but doubtless there is interest due. Counsel should agree on the interest figure.

This ruling by the trial court was clear error because, after stating that it did not agree with the calculations Sheri proposed, it abused its discretion by failing to calculate the arrearages and by not entering a judgment thereon.[29]

■■■■■ Once the validity of an order setting child support is established, the non-custodial parent bears the burden of proving that he satisfied the obligation and owes no arrearage.[30] It is clearly discretionary with the court to award interest on a child support arrearage; if there are factors making it inequitable to require payment of interest it may be denied.[31] However, in this case, the trial court did not make a finding of such inequity.

There was no evidence that Doug provided any services to the children, or that he made any attempt to substantially comply with the trial court's child support order.

■■■■■ The general rule is that interest should be allowed on deferred payments of a fixed amount.[32] KRS 360.040 contains the definitive formula for calculating interest on child support arrearages.[33] Once a payment becomes delinquent, it becomes a judgment, and interest generally runs from the payment's due date until it is paid.[34] KRS 360.040 states, in pertinent part, "[a] judgment shall bear twelve percent (12%) interest compounded annually from its date." The statute clearly and unambiguously requires interest calculated therein to be compounded annually. Therefore, we vacate the order on this issue and remand this matter for the trial court to calculate the arrearage and to enter judgment thereon with interest.

Sheri's final argument is that the trial court abused its discretion in reducing the medical reimbursement arrearages due from Doug to her. Sheri argues that the trial court should have awarded her arrearages due from Doug from April 1999 through January 2004 in the amount of $5,188.25, and that it erred in only awarding her $3,326.17. Specifically, the trial court reduced the amount owed to Sheri on the arrearages by $100.00 per year and

29. " 'Abuse of discretion in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable 'and unfair decision' ... The exercise of discretion must be legally sound" [citation omitted]. *Kuprion v. Fitzgerald,* 888 S.W.2d 679, 684 (Ky.1994). *See also Sherfey v. Sherfey,* 74 S.W.3d 777, 782–83 (Ky.App.2002).

30. *See Raymer v. Raymer,* 752 S.W.2d 313 (Ky.App.1988).

31. *See Hoskins v. Hoskins,* 15 S.W.3d 733 (Ky.App.2000).

32. *See Hardin v. Hardin,* 711 S.W.2d 863 (Ky. App.1986).

33. *Thurman v. Commonwealth, Cabinet for Human Resources,* 828 S.W.2d 368 (Ky.App. 1992).

34. *Young v. Young,* 479 S.W.2d 20, 22 (Ky. 1972).

found that the childrens' counseling expenses were unsubstantiated.

From our review of the record, we cannot conclude that the trial court abused its discretion in its award of the medical expense arrearage to the extent it is based upon its original order entered on March 31, 1999. However, the trial court's order provided certain arrearage awards based upon its simultaneous modification of the child support award. Since we have ruled that the trial court lacked jurisdiction to modify its original child support order as requested by Doug's October 22, 2003, motion, any language in the August 14, 2004, order referring to arrearage based upon the modification is void. Therefore, we affirm the trial court's August 14, 2004, order regarding the medical arrearages, except as it references any effect upon the arrearages by the trial court's simultaneous modification of child support, and reverse the order to that extent.

For the foregoing reasons, the order of the Oldham Circuit Court entered on January 15, 2004, is affirmed. The order of the Oldham Circuit Court entered on August 18, 2004, is affirmed in part, reversed in part, and vacated in part, and this matter is remanded for further proceedings consistent with this Opinion.

ALL CONCUR.