RENDERED: NOVEMBER 15, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1202-MR

ASHLEY NICOLE HARNEY                                           APPELLANT
(NOW McCONATHY)


                          APPEAL FROM JESSAMINE CIRCUIT COURT
v.                          FAMILY COURT DIVISION
                          HONORABLE JEFFREY C. MOSS, JUDGE
                          ACTION NO. 21-CI-00464


STUART AUSTIN HARNEY                                           APPELLEE


OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: COMBS, L. JONES, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Ashley Nicole Harney, now McConathy, brings this appeal

from a May 12, 2023, order of the Jessamine Circuit Court, Family Court

Division.[1] We affirm in part, reverse in part, and remand.

---

[1] The original Notice of Appeal was filed in this action on October 10, 2022, of a post-decree order entered on September 20, 2022. Because of a pending Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter, amend, or vacate the September 20, 2022, order, this Court held the

Ashley and Stuart Austin Harney (Austin) were married May 26, 2013, and had two children, C.N.H. and M.A.H. Ashley filed a petition for dissolution of marriage in the Bourbon Circuit Court, Family Court Division, on March 30, 2015. The parties resolved all issues relevant to the dissolution, and a Marital Settlement Agreement (MSA) was entered on April 22, 2015. Thereafter, Findings of Fact and Conclusions of Law and Decree of Dissolution (Decree) were entered on July 22, 2015. The parties' MSA was incorporated by reference into the Decree. Pursuant to the MSA, Austin, who was struggling with substance abuse issues, agreed to Ashley's being awarded sole custody of their children and being designated the primary residential parent. Austin was awarded time-sharing every other weekend and one weekday. Austin was ordered to pay child support of $422 per month to Ashley.

Over the next three years, Austin's child support was increased on a few occasions. More specifically, by order entered October 26, 2016, Austin's child support was increased to $553.98 per month, retroactive to October 15, 2016. Then, by order entered November 27, 2018, Austin's child support obligation was increased to $1,442.30 per month, retroactive to August 2, 2018.

appeal in abeyance from November 10, 2022, through May 25, 2023, for the family court to finalize all pending issues raised in the CR 59.05 motion. Following entry of the order by the family court on May 12, 2023, an Amended Notice of Appeal was filed on June 1, 2023, to include that order and any prior orders related to the September 20, 2022, order.

-2-

On July 26, 2021, Austin filed a motion in the Bourbon Circuit Court, Family Court Division, to transfer the matter to Jessamine County. By order entered in the Bourbon Circuit Court, Family Court Division, on August 17, 2021, this matter was transferred to the Jessamine Circuit Court, Family Court Division (family court). Austin then filed a motion to modify custody, to modify timesharing, and to reallocate the child tax exemption. Therein, Austin asserted he had maintained sobriety since December of 2017, had remarried, had purchased a home, had been exercising sole care of his prior born child, and had maintained steady employment. Austin also filed a motion seeking reimbursement for childcare costs. Therein, Austin alleged that Ashley may not have incurred some of the childcare costs for which he had reimbursed her.

By order entered June 27, 2022, the family court granted Austin's motion to modify custody and awarded Ashley and Austin joint custody of their two children. Relevant to the issues on appeal, the family court determined that Austin had a child support arrearage of $2,346.45 but ordered that "no interest shall accrue on [Austin's] child support arrears because no prior Order includes interest as part of the arrearage calculation." June 27, 2022, Order at 3. Regarding allocation of the child tax exemption, the family court granted Austin's request to claim C.N.H. for the 2021 tax year.

Ashley filed a timely motion to alter, amend, or vacate the June 27, 2022, order. Ashley argued that Austin should not be permitted to claim C.N.H. as a dependent on his 2021 taxes as Austin was still in arrears on his child support obligation. Ashley also asserted that the family court should reconsider its ruling on the accrual of interest on Austin's child support arrears. By order entered September 20, 2022, the family court denied Ashley's motion to alter, amend, or vacate as to the 2021 child tax exemption but granted Ashley's motion as to the accrual of interest on Austin's child support arrearage. As to the accrual of interest on the child support arrearage, the September 20, 2022, order provided that "[t]he Court alters its original order to provide that Ashley is entitled to interest at the legal rate on each payment from the time it is past [due] until paid in full." September 20, 2022, Order at 6.

Austin promptly filed a Kentucky Rules of Civil Procedure (CR) 59.05 motion to alter, amend, or vacate the provisions of the September 20, 2022, order regarding interest on Austin's child support arrearage. Apparently, in response, Ashley filed a verified motion to modify child support on October 5, 2022. Therein, Ashley claimed that Austin had not provided any income information since 2018. Austin then filed a motion requesting that the court set child support pursuant to its previous orders of June 27, 2022, and September 20,

2022.  A hearing was subsequently conducted on October 26, 2022, on Ashley's

and Austin's motions.  By order entered December 7, 2022, the family court held:

> 1.  In the last line of paragraph 7 of the June 27, 2022[,] order, the Court states, "The Court concludes that no interest shall accrue on Father's child support arrears because no prior Order includes interest as part of the arrearage calculation."
>
> 2.  In paragraph l9 of the September 20, 2022, order the Court states, "The Court grants Ashley's request to reconsider its prior ruling regarding her request to assess interest for past due child support.  In *Pursley v. Pursley*, 144 S.W.3d 820, [sic] (Ky. 2004), the Kentucky Supreme Court ruled that past due child support payments become vested when due and the Court has no power to modify the liquidated debt.  The Court alters its original order to provide that Ashley is entitled to interest at the legal rate on each payment from the time it is past due until paid in full."
>
> 3.  Austin's September 30, 2022[,] motion offers that there are exceptions to the general rule from *Pursley* that allow the court to deny a request for interest on child support arrearages if the court finds the imposition of interest would be inequitable.  Austin offers *Gibson v. Gibson*, 211 S.W.3d 601 (Ky. App. 2006) and *Rodgers v. Rodgers*, No. 2007-CA-001489-MR and 2007-CA-001506-MR, 2008 WL 4092830, [sic] (Ky. App. 2008) (an unpublished decision) in support of his arguments.  Austin offers that the Court's September 20, 2022, order regarding interest is inequitable and should be vacated.
>
> 4.  Ashley's response offers that the factors that were present in *Gibson* are not present in this case.  She also asserts that the Court's unpublished decision in *Arnett v. Childress*, 202l-CA-0348-MR, 2022 WL 7764854 (Ky. App. 2022), decided on October 14, 2022, continues to

-5-

hold that the imposition of interest on a judgment is not discretionary.

5.  Austin's reply offers facts from the chronology of the case to support his earlier argument that the award of interest would be inequitable.

6.  This case began in Bourbon County with the filing of a Petition for Dissolution by Ashley on March 30, 2015. Austin filed a pro se Entry of Appearance on April 10[,] 2015.  A Decree was entered on July 22, 2015, and incorporated the parties' Marital Settlement Agreement. The Decree provided that Austin pay Ashley $422 per month in child support along with his proportional share of childcare expenses and health insurance expense.  The Marital Settlement Agreement provides that the child support order is effective May 1, 2015.

7.  On February 12, 2016, the Bourbon County Attorney's Office filed a Motion for Contempt alleging that Austin had an arrearage of $2,668.13 as of January 31, 2016, as no child support had been paid since the original order was entered.  Following multiple court appearances, a Judgment and Order was entered on October 26, 2016, increasing his monthly child support payment to $553.98.  Following more court appearances, a new Judgment and Order was entered on January 18, 2017, establishing Austin's arrearage at $6,296.47 as of December 31, 2016, and requiring him to pay $46.02 per month toward that an arrearage. The current support payment was not modified by this order.

8.  On August 2, 2018, the Bourbon County Attorney's Office filed a Motion to Modify Child Support seeking to increase Austin's current support obligation.  On November 27, 2018, an Order and Summary Judgment was entered increasing Austin's current monthly child support obligation to $1,442.30 effective August 2, 2018, establishing an arrearage of $13,078.11 as of October 31, 2018, and maintaining his arrearage payment at $46.02

-6-

per month. Austin offers that $4,327.00 of this arrearage was due to an increase in the support amount and the order being retroactive to the date of filing of the motion. Austin's reply states he has paid as ordered from the entry of this order and currently has paid more toward his arrearage than he is ordered to pay. According to Austin's motion, Ashley believes Austin has paid a small amount less than he is ordered.

9. On July 26, 2021, Austin filed a Motion to Transfer this matter to Jessamine County. Said motion was granted by docket order on August 10, 202l, and by separate written order on August 17, 2021.

10. Austin filed his Motion to Modify Child Custody and Timesharing and Compel Child Tax Exemption Allocation on September 16, 2021. Ashley filed her Response on October 7, 2021, and for the first time in this matter, she brought up the issue of interest on unpaid child support. None of the prior orders addressed interest. On March 7, 2022, Ashley filed her Verified Motion for Show Cause Order. Paragraph 3 of said motion moves the Court "to award her pre- and post-judgment interest on this $442.27 amount that Austin owes to Ashley, at the statutory rate." Austin filed his response on March 17, 2022.

11. The Court considered the case law described above as well as *Hoskins v. Hoskins*, 15 S.W.3d 733 (Ky. App. 2000) and *Doyle v. Doyle*, 549 S.W.3d 450 (Ky. 2018).

12. The Kentucky Supreme Court in *Pursley* established the rule regarding interest on unpaid child support when it stated: "Past due payments for child support and maintenance become vested when due. Each payment is a fixed and liquidated debt which a court has no power to modify; therefore, Sharen Pursley was entitled to prejudgment interest as a matter of law from the date that each payment was due." [*Pursley*, 144 S.W.3d at] 828. This case was decided in 2004.

13. Two years later, the Kentucky Court of Appeals in *Gibson* makes a statement that is very applicable to the situation in this matter:

> "Once the validity of an order setting child support is established, the non-custodial parent bears the burden of proving that he satisfied the obligation and owes no arrearage. It is clearly discretionary with the court to award interest on a child support arrearage; if there are factors making it inequitable to require payment of interest it may be denied. However, in this case, the trial court did not make a finding of such inequity. There was no evidence that Doug provided any services to the children or that he made any attempt to substantially comply with the trial court's child support order." [*Gibson*, 211 S.W.3d at] 611.

> This sentiment was stated again in *Rodgers* (an unpublished decision for which discretionary review was denied).

14. *Gibson* offers two types of evidence that could be offered to support a finding that the award of interest would be inequitable. Applying such reasoning to this case, 1) did Austin provide services to the children during the time the child support went unpaid or 2) did Austin make any attempt to substantially comply with the child support order.

15. Austin acknowledges in the pleadings that there was a period of time during which he did not support the children and was not around the children. He further offers that it was better for the children that he was not around them during those times. The Court is unable to find that Austin was providing services to the children during the time his child support went unpaid.

-8-

16.  Again, Austin has acknowledged that he did not support the children for a period of time.  Orders were entered requiring him to pay child support on July 22, 2015, October 26, 2016, January 18, 2017, and November 27, 2018.  In each of those orders, his arrearage grew from $0 to $6,296.47 to $13,078.11.  During those times, there was no order entered regarding the amount of interest that was claimed by Ashley.  Soon after the entry of the most recent order in 2018, Austin began to do better.  He worked to straighten out his life and began paying his child support.  Ashley's pleadings allege that Austin rarely paid the required amount after the November 27, 2018, order.  Austin alleges that since the entry of the last order, he has paid more child support than he was required to pay in an effort to more quickly reduce his arrearage.

17.  It is only after Austin began doing better that Ashley is requesting the Court calculate interest for all arrearages.  While the Court is uncertain whether the issue of interest was brought up by Ashley during her dealings with the Bourbon County Attorney's Office that led to the three most recent orders, it is clear that none of those orders address interest on unpaid child support.

18.  The Court obtained an arrearage audit from the Jessamine County Attorney's Office, Child Support Division.  The Court attaches same hereto and incorporates same by reference herein.  Austin has made at least a partial payment of child support every month from January of 2018 to October of 2022, except one - June of 2018.  Of the remaining 57 months, Austin paid less than he was ordered 18 months and more than he was ordered 39 months.  During this time frame, Austin's child support arrearage has declined by over $3,000.  The Court finds that beginning in January of 2018, [Austin] began making attempts to substantially comply with his child support order.

19.  The Court partially grants Ashley's request for interest on Austin's unpaid child support.  Specifically, the court grants Ashley interest for unpaid child support that accumulated from August 1, 2015 (the date the first ordered payment was past due) to January l, 2018 (the date Austin began making attempts to substantially comply with the child support order).  Any child support obligations that have not been satisfied during that time period shall bear twelve percent (12%) interest compounded annually from the date of judgment.  The Court finds that it would not be equitable to require Austin to pay interest for unpaid child support after he began making attempts to substantially comply with his child support.  The Court also bases this finding on the fact that prior orders addressed arrearages but did not address the issue of interest.

20.  The Court directs the Jessamine County Attorney's Office to calculate the amount of interest that has accumulated from August l, 2015[,] to January 1, 2018, and to forward said amount to the Court so that the total owed may be reflected in a court order.

December 7, 2022, Order at 2-7.

Pursuant to the December 7, 2022, order, the Jessamine County Attorney's Office (JCAO) filed a Notice of Findings on February 9, 2023. Therein, JCAO determined that for the period between August 1, 2015, through January 1, 2018, Austin had a child support arrearage of $13,109.20, and that the interest on the arrearage was $1,573.10.  Both parties disagreed with JCAO's calculation.  By order entered May 12, 2023, the family court amended its December 7, 2022, order to provide that "interest is to be awarded from May 1, 2015[,] to January 1, 2018[,]" and that for the same period Austin owed interest of

-10-

$8,570.35 (through March 31, 2023). May 12, 2023, Order at 4. This appeal follows.[2]

To begin, Ashley contends that the family court erred by determining that she is not entitled to prejudgment interest on all of Austin's child support arrearage. More particularly, Ashley asserts that the family court erroneously determined that she was only entitled to prejudgment interest on the arrearage that accrued from May 1, 2015, through January 1, 2018.

It is well established that "[o]nce a [child support] payment becomes delinquent, it becomes a judgment, and interest generally runs from the payment's due date until it is paid." *Gibson v. Gibson*, 211 S.W.3d 601, 611 (Ky. App. 2006). However, whether to award interest on a child support arrearage is clearly within the sound discretion of the family court. *Id.* While the award of interest is discretionary, it may be denied "if there are factors making it inequitable to require payment of interest[.]" *Id.*; *see also Young v. Young*, 479 S.W.2d 20, 22 (Ky. 1972). The *Gibson* Court also identified two factors for consideration when weighing the inequity of requiring interest on a child support arrearage. *Gibson*, 211 S.W.3d at 611. The first factor to consider is whether there was an attempt by

---

[2] We note that Stuart Austin Harney has failed to file an appellee brief pursuant to Kentucky Rules of Appellate Procedure (RAP) 30(A). In accordance with RAP 31(H)(3), for purposes of this appeal, we have accepted Ashley Nicole Harney's statement of the facts set forth in her brief as correct, subject to our review of the entire record on appeal.

the child support obligor to provide "any services to the children." *Id.* And, the second factor to consider is whether the obligor "made any attempt to substantially comply with the trial court's child support order." *Id.*

In the case *sub judice*, it is undisputed that when the decree of dissolution was entered and child support was originally ordered, Austin was struggling with substance abuse issues, was not providing any services to the children, and was not substantially complying with his child support obligation. It is, likewise, undisputed that in December of 2017, Austin obtained sobriety and became more current on his child support obligations. Thus, the family court identified two relevant time-periods as to Austin's payment of child support: (1) from May 1, 2015, through January 1, 2018, and (2) from January 1, 2018, forward. The family court specifically noted that from May 1, 2015, through January 1, 2018, Austin was not meeting his child support obligation, and that from January 1, 2018, forward (until the October 2022 hearing), Austin made at least partial payments of child support each month and paid more support than was ordered in 39 of those months. Thus, the family court determined that from May 1, 2015, through January 1, 2018, Austin did not satisfy either *Gibson* factor; therefore, the court determined that interest should accrue on the arrearage. *Id.*

As to the period from January 1, 2018, forward (until the October 2022 hearing), Austin had satisfied the second *Gibson* factor by substantially

complying with the family court's order of child support. *Id.* Accordingly, the family court determined that interest should not accrue on the child support arrearage that accrued after January 1, 2018. Based upon the facts and our review of the record, we do not believe the family court abused its discretion by determining it would be inequitable to require Austin to pay interest on the unpaid child support arrearage that accrued after January 1, 2018. The record reflects that Austin has substantially complied with the child support order since January 1, 2018, and it was within the family court's discretion to not award interest thereon. *See Gibson*, 211 S.W.3d at 611.

Ashley also asserts that the family court erred by not awarding her interest on the $422.27 in attorney's fees that Austin was ordered to pay by September 15, 2015, per the parties' MSA. More particularly, Ashley asserts she is entitled to "prejudgment interest at the statutory rate of eight percent, as set by Kentucky Revised Statutes (KRS) 360.010." Ashley's Brief at 19. We agree.

It is well-settled that an award of attorney's fees may bear interest. 16 LOUISE E. GRAHAM & JAMES E. KELLER, KENTUCKY PRACTICE, DOMESTIC RELATIONS LAW §19:8 (2024); *see also Sharp v. Sharp*, 516 S.W.2d 875, 879 (Ky. 1974) (holding "[w]e know of no reason why that part of the judgment [for attorney's fees and costs] should not bear interest"). And, pursuant to KRS 360.010 the legal rate of interest is 8 percent per annum.

In the case *sub judice*, the parties' MSA provided that Ashley was entitled to attorney's fees and costs of $422.27 and that Austin was ordered to pay same by September 15, 2015. Unfortunately, Austin never paid Ashley's attorney's fees as ordered. In the June 27, 2022, order, the family court again ordered Austin to pay Ashley's attorney's fees of $422.27 within 30 days of entry of the final order herein. Following Ashley's motion to alter, amend, or vacate, the family court denied Ashley's request for interest on the award of attorney's fees by order entered September 20, 2022. Upon the whole, we believe the family court erred by not ordering that the $422.27 award of attorney's fees would bear interest at 8 percent per annum calculated from entry of the final order on September 22, 2022. *See Sharp*, 516 S.W.2d 875; *see also* 16 LOUISE E. GRAHAM & JAMES E. KELLER, KENTUCKY PRACTICE, DOMESTIC RELATIONS LAW §19:8 (2024). Therefore, we reverse and remand for the family court to calculate the interest owed on the $422.27 in attorney's fees and award same to Ashley.

Ashley also contends that the family court erred by ordering Austin to receive a credit in the amount of $7,453.10, which represented his overpayment of childcare costs. More specifically, Ashley asserts that the family court erroneously ordered Austin to receive a credit against his child support arrearage in the amount of $7,453.10 for his overpayment of childcare costs. Ashley argues that Austin is

-14-

not entitled to a credit against his child support arrearage as Austin had not filed a motion to modify his child support.

Allocation of childcare costs is addressed in KRS 403.211(6), which provides:

> The court shall allocate between the parents, in proportion to their combined monthly adjusted parental gross income, reasonable and necessary child care costs incurred due to employment, job search, or education leading to employment, in addition to the amount ordered under the child support guidelines.

And, in *Olson v. Olson*, 108 S.W.3d 650 (Ky. App. 2003),[3] this Court held that pursuant to KRS 403.211(6), the amount allocated for the cost of childcare is "in addition to the amount ordered under child support guidelines." *Olson*, 108 S.W.3d at 652 (quoting KRS 403.211(6)). The *Olson* Court further noted that the allocation of childcare costs is akin to a prepayment or a reimbursement of a portion of the actual cost incurred by the other party. *Olson*, 108 S.W.3d at 652. And, if the childcare expense was not actually incurred the other party is entitled to be reimbursed the amount of the over payment. *Id.*

In the case *sub judice*, Austin paid $7,453.10 to Ashley for childcare expenses that she did not incur. The court ordered that Austin was entitled to a credit of $7,453.10 to be applied toward his child support arrearage. The family

---

[3] Ashley argues that *Olson v. Olson*, 108 S.W.3d 650 (Ky. App. 2003) and its progeny should be overruled.

court's credit to Austin for child support arrearage is not tantamount to a modification of child support. Rather, the credit was merely a reduction to his child support arrearage. *See Olson*, 108 S.W.3d at 652. We perceive no error in the family court's ruling upon this issue and affirm same.

Ashley finally contends that the family court erred by allowing Austin to claim C.N.H. as a dependent on his 2021 taxes. Ashley asserts that the parties' MSA controls upon this issue; it provides:

> [Ashley] shall be entitled to claim both children as dependents on her 2015 income tax returns. Beginning with the 2016 returns, [Austin] shall be entitled to claim the parties' older daughter every year as a dependent on his income tax returns **on the condition that he is current on his obligation to pay child support, and his portion of health insurance and health care reimbursements as of December 31 of the applicable year**. [Ashley] shall be entitled to claim the younger daughter every year.

MSA at 7 (emphasis added).

In the June 27, 2022, order the court determined that although Austin was $2,346.45 in arrears in his child support (through March 14, 2022), he was entitled to a credit of $7,453.10 for his overpayment of childcare expenses, and thus was not in arrears on his child support obligation. More particularly, the family court ordered:

> The parties' counsel agree[s] that [Austin] owes $2,346.45 in child support arrearages through March 14, 2022, keeping in mind that interest does not and has not

accrued to same, and that [Austin] has received a credit for $7,453.10 based upon daycare expenses that were paid by [Austin] but not incurred by [Ashley] from 2019 to March 14, 2022. . . .

[Austin's] motion to claim [C.N.H.] for tax purposes in tax year 2021 is GRANTED, as what he has been ordered to pay has been paid for some years. [Austin] was current on the children's medicals through December 31 of 2021. [Austin] has paid what he was ordered to pay through the end of the 2021 calendar year. [Austin's] Motion to claim [C.N.H.] for tax purposes in future years pursuant to the 2015 Separation Agreement is also GRANTED, so long as [Austin] is current by December 31 of that year, in accordance with the parties' Agreement.

June 27, 2022, Order at 3.

As Austin was current on his child support obligation and his children's medical expenses for 2021, and therefore compliant with the parties' MSA, we do not believe the family court erred by awarding Austin the tax exemption for C.N.H. for the 2021 tax year.

In sum, we reverse and remand upon the issue of interest upon the award of attorney's fees to Ashley, and we affirm upon all other remaining issues.

For the foregoing reasons, the May 12, 2023, order of the Jessamine Circuit Court, Family Court Division, is affirmed in part, reversed in part, and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

-17-

BRIEF FOR APPELLANT:                 NO BRIEF FOR APPELLEE.

Michael Davidson
Nam H. Nguyen
Lexington, Kentucky