Roy CHAISSON *v.* Annette RAGSDALE

95-945                                    914 S.W.2d 739

Supreme Court of Arkansas
Opinion delivered February 12, 1996

*Greg L. Mitchell*, for appellant.

No response.

ROBERT L. BROWN, Justice. Appellant Roy Chaisson appeals from part of an order which (1) grants appellee Annette Ragsdale a setoff against the child support award for a debt she paid following the divorce, and (2) grants visitation rights. Annette Ragsdale did not file an appellee's brief. We reverse that part of the chancellor's order which grants the setoff and visitation rights.

On May 2, 1982, Roy Chaisson and Annette Chaisson (now Ragsdale)[1] were married. Two children, William Roy Chaisson and David Scott Chaisson, were born of that marriage. On October 6, 1988, the couple divorced in New Jersey. The New Jersey divorce decree awarded full custody of the two children to Annette Chaisson, with visitation rights granted to Roy Chaisson. Under the decree, Roy Chaisson was to pay $100.00 a week in child support to Annette Chaisson. He was further ordered to pay certain debts of the marriage, including payment of a loan owed to Atlantic Financial Company. That debt was later sold to Chase Manhattan Bank. Several months after the couple was divorced, Roy Chaisson filed for Chapter 7 bankruptcy. As a result of the bankruptcy, all of his debts, including the Chase Manhattan debt, were discharged. Chase Manhattan later pursued Annette Ragsdale for payment of the debt.

In July 1989, the two Chaisson boys went to visit their father in Mississippi where he now resides. Annette Ragsdale had become disabled due to a dislocated disk in her back, and because of her disability she and Ron Chaisson agreed that the boys would stay with their father. In March of 1990, Roy Chaisson filed a motion in Mississippi to modify the New Jersey divorce decree and requested that custody of the two children be placed in him and that his payment of child support be terminated. On April 6, 1990, he was awarded full custody of the two children by the chancery court in Mississippi, and his payment

---

[1] Annette Chaisson subsequently married Sid Ragsdale on January 16, 1993.

of child support was halted.

On November 3, 1993, Roy Chaisson, as a resident of Mississippi, filed a uniform support petition in Arkansas and requested that Annette Ragsdale, who had moved to Camden, pay him child support for their son William. (The second son, Scott, had been placed in an institution in Mississippi and was covered by Social Security.) Annette Ragsdale answered the petition and affirmatively pled the defense of setoff.

Two hearings were held on the matter. At the first hearing, Annette Ragsdale testified that after Roy Chaisson took bankruptcy, Chase Manhattan pursued her for payment of the credit card debt. She introduced into evidence the total amount she paid on that debt of $3,816.51. At the second hearing, Annette Ragsdale requested that visitation be set as well as setoff for the debt paid. The chancellor awarded child support to Roy Chaisson in the amount of $37.50 a week. He further found that Annette Ragsdale was entitled to a setoff in the amount of $3,815.51[2] due to her payment of the Chase Manhattan debt and, in light of that, he held her payments in abeyance until October 20, 1995. He further granted her visitation rights.

Roy Chaisson raises two points regarding the award of setoff and visitation on appeal. Those points can best be combined and framed this way: did the chancellor exceed his authority under the Uniform Interstate Family Support Act (UIFSA)? Roy Chaisson indicates in his brief that the issue of the chancellor's subject matter jurisdiction over a debt contained in a New Jersey divorce decree was not raised at the trial level. However, the issue of whether the chancellor had the authority to address setoff and visitation issues in a UIFSA proceeding was clearly raised. Accordingly, we will consider that issue.

Arkansas enacted UIFSA in 1993, and it is codified at Ark. Code Ann. § 9-17-101 *et seq.* (Repl. 1993). It is manifest from the title of the uniform act, as well as the description of proceedings that may be brought under it, that the enforcement of interstate child support awards is the Act's purpose and focal point.

---

[2] The discrepancy between the amount of $3,816.51 submitted in the way of proof and $3,815.51, which the chancellor ordered to be the setoff amount, exists in the record.

*See* Ark. Code Ann. § 9-17-301 (Repl. 1993). The duties and powers of the responding tribunal relate to the goal of enforcing child support orders. *See* Ark. Code Ann. § 9-17-305 (Repl. 1993). Indeed, the Act specifically prohibits conditioning support orders upon compliance with visitation rights. Ark. Code Ann. § 9-17-305(d) (Repl. 1993). The commentary to § 9-17-305 is even more specific and states that visitation issues should not be litigated in the context of UIFSA proceedings. Comment to Ark. Code Ann. § 9-17-305 (Repl. 1995).

This court has addressed the issue of whether collateral matters are appropriate for consideration when the issue before the chancellor is enforcement of child support under a uniform act. *See State* v. *Robinson*, 311 Ark. 133, 842 S.W.2d 47 (1992); *State* v. *Kerfoot*, 308 Ark. 289, 823 S.W.2d 895 (1992); *Iowa* v. *Reynolds*, 291 Ark. 488, 725 S.W.2d 847 (1987). In all three cases, the uniform act involved was the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), which was the predecessor act to UIFSA. We held in each case that consideration of collateral matters, whether they be visitation rights or affirmative defenses to liability for child support, was error.

In both *State* v. *Kerfoot, supra,* and *State* v. *Robinson, supra,* we quoted with approval from *Todd* v. *Pochop*, 365 N.W.2d 559 (S.D. 1985), which concerned the purpose behind the Uniform Reciprocal Enforcement of Support Act (URESA):

> The very purpose of the URESA requires that it be procedurally and substantively streamlined. Interstate enforcement of support obligations will be impaired if matters of custody, visitation, or a custodial parent's contempt are considered by the responding court. The introduction of such collateral issues will burden the URESA mechanism. Moreover, permitting the resolution of other family matters in a URESA petition proceeding may deter persons from invoking the URESA.

*Todd*, 365 N.W.2d at 560.

The same holds true in the case before us. UIFSA actions are not intended to open up for renewed scrutiny all issues arising out of a foreign divorce. The purpose of UIFSA is support of the child and enforcement of the same. Other issues

such as visitation and payment of debts under the divorce decree are collateral matters which necessarily burden the child support determination and run counter to the goal of streamlining these proceedings.

The facts in this case are analogous to those considered by the Wyoming Supreme Court in 1986. *See Macy v. Macy*, 714 P.2d 774 (Wyo. 1986). In *Macy*, the husband was required to pay child support by the divorce decree, and the wife was required to pay certain marital debts, one of which was a joint credit card debt. The wife later filed for bankruptcy and named her ex-husband as a creditor. The bankruptcy court discharged all the debts listed in the petition, including the joint credit card debt. The trial court held that the husband was entitled to a setoff against ordered child support for the amount of the debt that he was ultimately required to pay after his ex-wife had been discharged. The Wyoming Supreme Court reversed and held that the husband was enjoined from claiming any setoff because the claim of nondischargeability should have been made by him to the bankruptcy court, and there was no indication that he had done so. The Wyoming Supreme Court stated:

> [I]t should be mentioned that child support is for the benefit of the children as plaintiff's obligation to contribute to the upbringing of his children. A support payment is the children's money administered in trust by defendant for their benefit. When the plaintiff withholds support for the children, he is depriving them. . . . Plaintiff and the trial judge seem to have lost sight of the real purpose of child support.

*Macy*, 714 P.2d at 777.

The reasoning of the Wyoming Supreme Court concerning setoff is persuasive and dovetails with our endorsed policy of eliminating collateral matters in connection with the enforcement of child support orders under UIFSA. We are aware that the general setoff statute provides that a setoff may be pled "in any action for the recovery of money." Ark. Code Ann. § 16-63-206 (1987). We do not construe an action for the establishment of child support as an action for the recovery of money.

In sum, we conclude that the authority of the chancellor in considering the UIFSA petition was limited to establishment of child support and its enforcement. Resolution of other matters like setoff and visitation exceeded that authority in the UIFSA context. As we said in *State* v. *Kerfoot, supra,* the forum in which to argue about visitation rights is either where the parties obtained their divorce or the forum where the custodial parent and child reside. The order of the chancellor as it pertains to setoff and visitation is reversed, and the matter is remanded for orders consistent with this opinion.

Reversed and remanded.