Steven LICHTENSTEIN, Appellant,

v.

Roberta J. BARBANEL, Appellee.

No. 2008–SC–000661–DG.

Supreme Court of Kentucky.

May 20, 2010.

James Michael Smither, J. Michael Smither, PSC, Louisville, KY, Counsel for Appellant.

Roberta J. Barbanel, Loveland, OH, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This case involves Steven J. Lichtenstein's appeal of two Income Withholding Orders of the Jefferson Family Court which require garnishment of his wages under two separate orders: (1) for child support arrearage, spousal support arrearage, medical care, insurance reimbursement, and attorney's fees; and (2) for Roberta Lichtenstein Barbanal's monetary

share of the marital property and reimbursement for a marital debt that she paid.

Steven now contends that the family court abused its discretion, or violated his right to due process, when it entered the Income Withholding Order "regarding child support" before it accounted for Roberta's child support arrearage pursuant to the parties 1996 Agreed Order—which had changed custody of the children to Steven and in which Roberta agreed that she would be liable to him for support.

In addition, Steven asserts that Kentucky's Uniform Interstate Family Support Act (UIFSA) (KRS 407.5101) does not apply to *marital debt or property* divided during a divorce action, but only to *support* and the other remedies that are specifically set forth in KRS 407.5101(21).[1] Consequently, he argues that the "other support" Income Withholding Order, which includes money for property division and reimbursement of marital debt, exceeds the statutory limitations otherwise applicable to ordinary garnishment of nonchild support debt.[2]

## I. Background

### A. Procedural History

The procedural history of this case fills twenty-one volumes and includes three appeals. Even so, review of its development is important in addressing the issues now before this Court.

Steven and Roberta were married in 1978. Steven is a physician and Roberta is an attorney. Two children were born of the marriage—Ariana and Drew.

Steven filed for divorce on November 5, 1990 in the Jefferson County Circuit Court. On June 6, 1996, the court issued a ruling on all financial issues, (including child support), and determined Steven's liability to Roberta as follows:

$40,000.00—Marital property share for the medical practice;

$3,729.00—Reimbursement for child medical expenses;

$2,800.00—Reimbursement for marital debt Roberta paid;

$57,765.21—Pendente lite maintenance, child support, and medical insurance arrearages; and,

$75,000.00—Attorneys' fees and court costs.[3]

In addition, the court assessed all martial debt, as well as the Commissioner's fee, against Steven.[4]

On September 17, 1996, Roberta served an Order of Wage Garnishment on Steven's employer, Louisville Children's Eye Specialists, PSC (PSC).[5] From September 1996 through February 2000, the PSC re-

---

1. An Income Withholding Order is unique to the UIFSA. While garnishment of wages may be pursued for any debt, an Income Withholding Order may be issued only on a "support order" under the UIFSA. The Income Withholding Orders at issue here are distinguished as "child support" and "other support" by the trial court and we refer herein to those orders as such.

2. KRS 427.010(2) and its federal companion, 15 U.S.C. § 1673(a), allow for garnishment (withholding) of 25% of a person's monthly pay for a debt reduced to judgment, whereas KRS 427.010(3) and 15 U.S.C.

§ 1673(b)(1)(A) provide an exception to that rule, allowing withholding of 50%–65% for "support."

3. Thus, at this time, Roberta's judgment totaled $179,294.21.

4. The parties appealed the 1996 judgment. By Memorandum and Opinion dated August 28, 1998, the Court of Appeals affirmed the trial court on all issues.

5. Steven was the sole shareholder of Louisville Children's Eye Specialists, PSC.

mitted $8,817.74 to Roberta pursuant to the wage garnishment.

During the battle over money, the parties' minor children went to live with Steven. On October 2, 1996, the parties signed an Agreed Order (the 1996 Agreed Order) giving Steven physical custody of the children, discontinuing his child support for as long as the children were with him and reserving the issue of *the amount of child support to be paid* by Roberta. The parties agreed that the amount Roberta owed would be "set-off" as against Steven's child support arrearage.

All was quiet between Steven and Roberta during their children's high school years. Then, on January 30, 2003, after Steven had helped pay for Ariana's college education and Drew was enrolled in the Naval Academy, Roberta moved the family court to hold Steven in contempt for failing to satisfy the June 6, 1996 judgment and to hold the PSC liable for its failure to respond to the 1996 Order of Wage Garnishment.

In response, Steven requested that the court establish Roberta's child support for the time that he had custody of the children and to determine, with the off-set, the amount that he actually owed Roberta under the June 6, 1996 judgment. During contempt proceedings, Steven renewed his request for a determination of Roberta's child support.

In response to the parties' various motions, the family court issued orders addressing the terms of the parties' 1996 Agreed Order and determining the PSC's liability under KRS 425.526 for the garnishments. As to the agreed order, the family court found that the parties had modified the original child support order, that it was "an enforceable order, and that its terms *are at issue in the litigation now*

*pending before the Court."* (Emphasis added). The court went on to determine that the agreed order applied as to an off-set *"only to the child support arrearage issue against both parties."* (Emphasis in original). Regarding Steven's PSC's liability, the court found it liable to Roberta and awarded a judgment against the company for the "funds that should have been withheld from the judgment debtor's earnings ... plus 12% interest on those funds not properly withheld...." The court made a specific finding that *"none"* of the $121,586.76 ("other support") reflected in the Order of Wage Garnishment was from child support arrearage. (Emphasis original).

Given its findings, the court reasoned that the contempt proceedings as to Steven's alleged non-payment of the $121,529.00 in debts (property/reimbursement/healthcare/attorney fees) and the non-payment of $57,765.21 (child support) would *"be heard separately as unrelated claims."* (Emphasis added). The court went onto hear evidence of Steven's alleged contempt as to "other support" and found that Steven had not paid the arrearages. Thus, although the court purportedly bifurcated the property and child support issues, it held Steven in civil contempt for failing to pay the *June 6, 1996 judgment as a whole,* including child support, by order dated April 26, 2006. As a result, the court scheduled a "purge" hearing but did not schedule a separate hearing on the child support issues.[6]

### B. The Income Withholding Orders

#### 1. Order 1

In July 2005, Steven moved to Illinois and began working for Illinois Eye Center. Later, in August of 2006, Roberta moved for, and the court issued, an Income With-

---

**6.** Steven did not appear for the purge hear- ing.

holding Order for $639,773.12.[7] This order encompassed the entire June 1996 judgment, with interest.[8] It also required that Steven's employer withhold 360 semimonthly payments of $3,835.56 from his wages. The court *did not* determine the amount of child support that Roberta owed before entering the Income Withholding Order. Steven moved to vacate the order arguing, in part, that property division and marital debt does not constitute "support" under KRS 407.5101.

### 2. Orders 2 and 3

In response to Steven's arguments, Roberta requested *two* superseding Income Withholding Orders: one order for "monies owed for unpaid child support arrearages" and the *second* for "monies owed for other support" The Court denied Steven's Motion to Vacate on February 7, 2007, and on the same day entered two Amended and Clarified Income Withholding Orders: one for child support arrears [9] and one for "other support." [10] It also entered an order denying Steven of "any relief requested" until he purged himself of contempt.

### 3. Orders 3 and 4

On March 3, 2007, Roberta moved the court again for Income Withholding Orders to supersede the February orders as those orders did not comply with Illinois law. Again, Steven objected.[11] On March 12, 2007, the court entered a child support arrearage order for $247,586.08, to be withheld at $9,000.00 per month, and an "other support" arrearage order for $420,273.36, to be paid at $12,000.00 per month.

Steven appealed the issuance of the Income Withholding Orders of February 7, 2007 and March 16, 2007, asserting that the family court's failure to determine the amount to be "off-set" against the child support arrearage before the orders were entered was an abuse of discretion, or a violation of due process. He also argued that the UIFSA does not support the issuance of an Income Withholding Order for amounts due for marital property division or reimbursement of marital debt and thus there was no basis to withhold his income at the rate of 65%.

## III. *Analysis*

### A. Failure to Determine Child Support under the Parties' 1996 Agreed Order

■ The Court of Appeals held that the family court did not abuse its discretion in failing to determine the amount of child support that Roberta owed, reasoning that Steven "points to no discovery request nor any action taken specifically to establish Roberta's child support obligation ... and his failure to do so constituted a waiver of

---

7. The 1996 award of $179,294.21 accumulated to this amount by virtue of the application of KRS 360.040, which provides for post-judgment interest at 12% compounded annually.

8. On August 28, 2006, the Court also issued an Order of Arrest for Steven for failing to purge himself of contempt—e.g., by not paying the *property* arrears.

9. On its order for child support arrears, the court added a handwritten note, "hearing on objections heard and considered: and reject-

ed," and on the order for "other support," it noted: "Ct. held hearing on Petitioner's objections, having considered same, rejects objections."

10. The order for "other support" included Roberta's marital share of the medical practice, reimbursement for the marital debt that she paid and attorney's fees, for a total balance of $399,390.96 as of September 28, 2006.

11. Steven had already appealed the issuance of the February Income Withholding Orders.

this issue." Thus, Steven's abuse of discretion and constitutional arguments were dismissed. We disagree with this rationale and result and thus the issue of the amount of Steven's arrearage "off-set" must be remanded for further proceedings.

 A trial court has broad discretion in the way that it conducts its business. Abuse of discretion " 'in relation to the exercise of judicial power implies arbitrary action or capricious disposition under the circumstances, at least an unreasonable and unfair decision.' ... The exercise of discretion must be legally sound." *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994) (citations omitted).

 However, once "the validity of an order setting child support is established, the non-custodial parent bears the burden of proving that he satisfied the obligation and owes no arrearage." *Gibson v. Gibson*, 211 S.W.3d 601, 611 (Ky.App.2006) (*citing Raymer v. Raymer*, 752 S.W.2d 313 (Ky.App.1988)).[12] In *Gibson*, the Court of Appeals considered whether the trial court abused its discretion when it failed to enforce the parties' child support agreement. In that case, the child support amount was agreed to, but the court did not agree with the custodial parent's calculations. Yet, the court did not proceed to make the correct calculations, and therefore did not enter a judgment as to the child support arrearage owed. To that issue, the Court of Appeals held that the court "abused its discretion by failing to calculate the arrearages and by not entering a judgment thereon." *Id.*

In the instant action, we know that the issue of *the amount of child support to be paid by Roberta* was *reserved for future determination*, and that the amount, once determined, would be "off-set" against the arrearage that Steven owed. They agreed to this.

Moreover, the trial court, in its September 1, 2004 order, found the parties' agreement to be "an enforceable order" and that "its terms *are at issue in the litigation now pending before the Court.*" (Emphasis added). The court then bifurcated the issue of child/spousal support from "other support," scheduling a show cause contempt hearing regarding the "property arrearage" *only* and continued the show cause hearing on alleged contempt for failure to pay child support arrearage. As the child support issues were on hold, the court declined at that time to determine the amount of child support that Roberta owed. Steven raised the matter again *during* the contempt proceedings as to "other support," but the court passed all matters relating to child support, including any determination of the amount of arrears that Roberta owed.

The court's finding that the issue of child support owed by Roberta *was pending* in the current litigation and the *sequence of events as ordered* strongly indicate the court's intention to only address the alleged contempt as to "other support," so that it could address the child/spousal support contempt issue *and* child support arrearages that Roberta owed at the same time. This is buttressed by the fact that the court compelled Roberta to provide documentation regarding her earnings.[13] However, after the court heard and ruled on the contempt as to "other support," the court entered an Income Withholding Order as to the *entire* June 6, 1996 judgment amounts, including child support, without

---

12. Here, by virtue of the 1996 Agreed Order, Roberta was the non-custodial parent.

13. Steven served interrogatories and requests for production concerning Roberta's current income and Roberta refused to answer arguing that her income was irrelevant to the issues at hand. The trial court disagreed.

considering the amount of child support arrearage owed by Roberta in light of the "off-set."

Steven moved to vacate the first order, claiming that it did not comport with KRS 407.5101. He argued that an Income Withholding Order for monies not owed as child or spousal support is "outside the remedies of KRS 407.5101." The court subsequently issued two amended withholding orders dated February 7, 2006 and two more superseding orders on March 12, 2007, for *child support arrearage*, and "Other Support Owed To Respondent."[14][15] Yet, the court had not determined the "off-set" amount that it previously found Steven entitled to.

It is significant that the court entered five Income Withholding Orders and, each time, continued to differentiate between the "child support" order and the "other support" order. We agree that the trial court did not have to address the alleged contempt as to child support *before* compelling Steven to pay arrears on the "other support" because the fact that he owed property arrears was uncontested.[16] Yet, the amount he owed in child support arrears *was* contested and the court ruled

that Roberta's arrearage had to be determined. Thus, the court would have been justified in proceeding with the determinations as to "other support" had it not entered an order as to *child support*— subjecting Steven's wages to the 65% withholding rate—before it ascertained the precise amount owed by Roberta and thus, Steven.

Plainly, the reasoning in *Gibson* argues for a similar result. The facts before us, like those in *Gibson*, demand the calculation of the child support arrearage that Roberta owed concurrent with the determination of a "net" amount that Steven owed.

█ A trial court has no authority to forgive child support arrearage. *Price v. Price*, 912 S.W.2d 44, 46 (Ky.1995) (*citing Mauk v. Mauk*, 873 S.W.2d 213, 216 (Ky. App.1994)). Here, arrearage accrued but without an amount certain because the parties agreed as to the date that Roberta's obligation would begin.[17] We can be certain of that date, October 2, 1996, because the children were already living with Steven when the agreement was executed.[18] The fact that Roberta and Steven

14. In the interim, Steven filed further objections to the entry of the Income Support Orders, contending that the support order should not be entered before Robert's arrearage was determined. Steven's counsel *also* raised this argument during the hearing on the third motion for Amended Income Withholding Orders and the court's order reflects a handwritten note: *"Objections noted."*

15. The court ordered that the amounts withheld "should not exceed 65% of his [Steven's] disposable income."

16. One may question whether a debtor is subject to contempt, and incarceration, for failure to pay debt other than child support. This issue was not raised on appeal.

17. Roberta argues that Steven's flagrant failure to pay the child support arrears and failure to prosecute the 1996 agreed order constitutes waivers of his right to claim child support against her. However, we note that, from 1990 through June 1992, the parties equally shared care of their children and Steven was the custodial parent of Ariana (from 1996 through 1997) and of Drew (from 1996 through 2002). Steven waited for the parties agreed order of October 1996 until 2003 to collect child support and Roberta waited for the court's judgment of June 1996 until 2003 to collect the arrears that she was entitled to. Roberta concedes that Steven has now paid the child support arrearage, minus a portion of the interest.

18. The court heard child custody and visitation in June of 1992. Over two dozen witnesses testified during the four day trial. The children were living with their parents on alternate weeks at that time. On August 7, 1992, the circuit court awarded custody of the

chose to reserve the determination of the exact amount that Roberta would pay does not prohibit application of this principle in this case: the parties agreed that Roberta would owe child support and she did not pay child support. Therefore, arrears accrued.[19] Once the court determined that the order was enforceable, i.e., a valid child support order, *and* that the issue was pending, i.e., properly before the court, it was incumbent upon the court to calculate the arrearage (render judgment on the arrearage that Roberta owed) and allow the "off-set" of that amount against Steven's arrears before entry of any "child support" Income Withholding Order. The failure to do so was error.

### B. "Support" and the Uniform Interstate Family Support Act

■ The Court of Appeals also reviewed KRS 407.5101(21), and noted that the definition of "support order" was "sufficiently broad to include [*all of*] the items covered in the original 1996 judgment of the trial court." (Emphasis added). We disagree and hold that monies owed for interest in marital property *or* for payment of marital debt cannot be construed as "support" within the context of the Family Support Act.

We review the Court of Appeals' construction and application of KRS 407.5101(21) *de novo*. *See Richardson v.*

*Louisville/Jefferson County Metro Gov't*, 260 S.W.3d 777, 779 (Ky.2008) (*citing Osborne v. Commonwealth*, 185 S.W.3d 645, 648 (Ky.2006)).

This statutory provision provides:

Support Order—means a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief. . . .

KRS 407.5101(21).

■ "To determine legislative intent, we look first to the language of the statute, giving the words their plain and ordinary meaning." *Richardson*, 260 S.W.3d at 779. The Court can enforce a "statute only as written, and the intent of the Legislature must be deduced from the language it used, when it is plain and unambiguous. . . ." *Western Kentucky Coal Co. v. Nall & Bailey*, 228 Ky. 76, 14 S.W.2d 400, 401–02 (1929). Where a statute is unambiguous, we need not consider extrinsic evidence of legislative intent and public policy. *County Board of Education Jefferson County v. Southern Pac. Co.*, 225 Ky. 621, 9 S.W.2d 984, 986 (1928). If the statutory language is ambiguous, we will look to other sources to ascertain the leg-

---

children to Roberta. In its Order, the court: (1) did not address the written report or testimony of the only professional to counsel each of the family members, who opined that Steven was the best choice as custodial parent; and (2) failed to acknowledge Roberta's paid expert who testified that the children responded better to their father. Further, in 1993, a child welfare agent petitioned the family court to award custody to Steven and Steven made the same appeal to the circuit court. However, Roberta retained custody until 1996.

**19.** At no time before 2003 did Roberta claim that the 1996 support agreement with Steven was invalid. Moreover, Steven did not "waive" the issue of child support as he repeatedly brought the issue to the court's attention and because the agreement was signed in 1996—the statute of limitation to pursue child support (either to establish *or* enforce) is fifteen years. KRS 413.090.

islature's meaning, including legislative history. *MPM Financial Group Inc. v. Morton,* 289 S.W.3d 193, 198 (Ky.2009) (citation omitted). We will read the statute as a whole, and with other parts of the law of the Commonwealth, to ensure that our interpretation is logical in context. *See Richardson,* 260 S.W.3d at 779 (*citing Lewis v. Jackson Energy Co-op. Corp.,* 189 S.W.3d 87, 92 (Ky.2005)).

Steven and Roberta's arguments emphasize the fact that the term "support," as it is used in "support order," is subject to various interpretations and is, therefore, ambiguous. We agree. Many words within the definition of "support order" have "plain and ordinary meaning," others do not. The Comments following the Interstate Family Support Act of 1996 provide that the terms in sub-section 21 are "subject to individualized definitions on a state-by-state basis." *Uniform Laws Annotated,* Vol. 9, Part IB, 258. Thus, we will determine the meaning of "support order" in accordance with common understanding, current law, logic, and legislative intent, because we presume that our legislature did not intend an "absurd result." *See Workforce Dev. Cabinet v. Gaines,* 276 S.W.3d 789, 793 (Ky.2008); *Commonwealth v. Reynolds,* 136 S.W.3d 442, 445 (Ky.2004).

The United States Congress required that every state adopt the Uniform Interstate Family Support Act (UIFSA) by January 1, 1998. *See* 42 U.S.C. § 654[20]; 655, 666[f]. In order to receive federal funding for social welfare programs, Kentucky adopted the UIFSA on January 1, 1998, replacing the Uniform Reciprocal Enforcement of Support Act (URESA). URESA allowed a state to establish, modify, or vacate a support order, even when the order had been created in another

jurisdiction. Often this resulted in multiple, inconsistent judgments—and injustices—as a person could avoid judgment by moving to another state and having the support obligation modified, or even vacated. The UIFSA was designed to correct this problem. This statute establishes a one order system, whereby all states are required to recognize and enforce a support order rendered in another state. *Gibson,* 211 S.W.3d at 606. The UIFSA provides for "Income Withholding Orders" that are entitled to the same recognition and enforcement efforts, no matter where the obligated parent lives. KRS 407.5101(6).

Although we have never considered whether a "support order" and a subsequent Income Withholding Order allow for garnishment of monies received from the division of marital property (or as reimbursement for payment of marital debt), statutes closely related to the UIFSA shed light on the legislative intent.[20]

Because the UIFSA was adopted, at least in part, so that Kentucky would continue to receive federal funding for social welfare programs, we look to the language of KRS 405.465, which is titled: "Income withholding or wage assignments for child support, medical support, maintenance, and medical support insurance orders." Here, the legislature provided for wage garnishment by the Cabinet for Families and Children for "child support, medical support, maintenance, and medical support insurance orders that are established, modified, or enforced by the Cabinet...." It is telling that the Cabinet is also allowed to register an income withholding order under the UIFSA. KRS 407.5605.

Nowhere in KRS 405.465 (including its historical notes and the Legislative Re-

---

**20.** Roberta argues that reimbursement for the marital debt that she paid and her interest in

marital property falls within "other relief" as provided for by KRS 407.5101(21).

search Notes) do we see any reference to payment of debt *not* arising from the obligation to pay support for a child or spouse. Thus, the Cabinet does not have the authority to pursue debt owed to a custodial parent due to the failure of the other parent to pay his or her share of the divided marital debt. This is compelling. It is clear from reading the UIFSA together with KRS 405.465 that Congress and our General Assembly were concerned about support, not marital debt.

Of our sister states, it appears that only Arkansas has considered whether the payment of a marital debt may be set-off against child support under the UIFSA. *Chaisson v. Ragsdale*, 323 Ark. 373, 914 S.W.2d 739 (1996).[21] In Chaisson, the mother was awarded custody of the children and the father was ordered to pay certain marital debts. Several months later, the father filed Chapter 7 bankruptcy and his marital debts were discharged. However, a creditor pursued the mother for payment of the debt. *Id.* at 740. Later, the father gained custody of his sons and filed a petition pursuant to the UIFSA seeking child support. The mother pled the defense of "off-set," arguing that she should get credit for the marital debt that she paid. *Id.* The lower court allowed the

off-set, but the Arkansas Supreme Court reversed and remanded the case, reasoning that "[o]ther issues, such as visitation and payments of debts under a divorce decree, are collateral matters which necessarily burden child support determinations and run counter to the Act's goal of streamlining these proceedings." *Id.* at 741.[22]

Moreover, during the Senate Committee on Health and Welfare meeting on March 14, 1996, the members briefly discussed the federal policy behind the UIFSA, and verbalized the hope that the statutory scheme would "successfully package all things child support," to ease the burden [to the courts] of inconsistent "child support and maintenance orders" and to "hinder dead-beat [parents] from escaping enforcement" of those orders. *Uniform Interstate Family Support Act: Committee Meeting on adoption of act, revisions to same* (1996).

We agree with the committee and the Arkansas Court's line of reasoning. Roberta paid a marital debt initially assessed to Steven.[23] On June 6, 1996, the trial court ordered Steven to reimburse Roberta. In 2006, the family court included this

---

**21.** Other states have considered whether "collateral matters" are properly heard under their uniform child support act. The Kansas Supreme Court has held that "[t]he goal to be achieved under URESA is to provide a separate and independent forum to promptly and expeditiously enforce the duty of support without allowing complex collateral issues to become involved." *See Thompson v. Kite*, 214 Kan. 700, 522 P.2d 327 (1974); *Paredes v. Paredes*, 118 Ill.App.3d 27, 73 Ill.Dec. 765, 454 N.E.2d 1014, 1017 (1983) ("The primary purpose of URESA is to secure support for dependent children from persons legally responsible for their support.") (citations omitted).

**22.** The Arkansas Supreme Court had addressed the issue of whether "collateral mat-

ters" are appropriate for consideration under Arkansas' revised version of URESA. *See State v. Robinson*, 311 Ark. 133, 842 S.W.2d 47 (1992); *State v. Kerfoot*, 308 Ark. 289, 823 S.W.2d 895 (1992); *Iowa v. Reynolds*, 291 Ark. 488, 725 S.W.2d 847 (1987). In each case, it held that consideration of collateral matters, whether they be visitation rights or affirmative defenses to liability for child support, was error.

**23.** The record is silent as to whether Roberta chose to pay the debt or whether the creditor collected the debt from her though, in her brief to this Court, Roberta states that she was "forced" to pay the debt. We do know that Steven discharged all of his marital debt in a Chapter 7 action.

debt, with interest, in the Income Withholding Orders. To consider reimbursement of this marital debt as "support" of the children would be to seriously confuse the purpose of support—which is both a legal and moral obligation to provide one's child with the necessities of life. It is logical that the reimbursement of debt is a matter "collateral" to the primary monetary issue in any divorce—support of the child. There is not room in the UIFSA for litigation of matters collateral to child support or spousal support, such as reimbursement of marital debt. It will simply complicate the issue, as well as hamper the courts' remedies on contempt. Therefore, an order for reimbursement of a marital debt paid is not child "support" under Kentucky's UIFSA and cannot be enforced as such by an Income Withholding Order.[24]

■ Steven also asserts that Roberta's award for her interest in the medical practice is not spousal support under the UIFSA. Spousal support may also be a legal obligation but is contingent upon certain statutory factors. *See* KRS 403.200. Moreover, courts may award lump sum payments in lieu of maintenance. If, indeed, the award of $40,000.00 was for maintenance, as Roberta contends, then it may be enforced under the UIFSA: if the money was paid solely as an "equalization payment" for Roberta's marital share of the medical practice, it cannot be collected under the UIFSA, as debt owed for the division of marital property is certainly a collateral matter to support.[25]

■ However, there are indicia of support that are helpful in determining whether an award in a divorce decree is maintenance or the division of property. In *Mattingly v. Mattingly,* 164 S.W.3d 518 (Ky.App.2005), the Court of Appeals found that an award is in "the nature of support" and therefore not dischargeable in bankruptcy, if "(1) [i]t is owed to a spouse, former spouse, or child of the debtor; (2) [i]t has not been assigned to another entity, except pursuant to section 402 of the Social Security Act; (3) [i]t arose in connection with a divorce decree, separation agreement, property settlement agreement, order of a court of record, or determination made by a governmental unit with state or territorial law"; and (4) [i]t is "in the nature of alimony, maintenance or support." 164 S.W.3d at 521–22.

While the court in *Mattingly* was looking at a debt to determine dischargeability, we agree that the elements set forth are helpful in determining whether an award during divorce is in fact "support." Here, as in *Mattingly,* the first three elements of the test are met. However, in this case, the record does not support Roberta's contention that the $40,000.00 was "in the nature of alimony, maintenance or support."

In its June 6, 1996 order, the trial court made a point of discussing the parties' objections to the "value" placed on the medical practice. Roberta had ar-

---

24. Neither can we say that the reimbursement of the debt was "support" for Roberta. The lower court clearly delineated this debt as part of the marital debt division. There is nothing in the record to indicate that the trial court meant for reimbursement of the debt to be "maintenance," or even "supplementary to maintenance." In fact, maintenance was discontinued on June 6, 1996. Later, maintenance was reinstated because Roberta was unemployed.

25. Roberta argues that reimbursement for the marital debt that she paid and her interest in marital property falls within "other relief" as provided for by KRS 407.5101(21). However, we cannot find that "other relief" includes collateral matters—which only detracts from the goal of the UIFSA.

gued that she was entitled to more than $40,000.00 of the medical practice, as her "*share*" had been reduced by debt assigned to Steven. However, the court relied upon KRS 403.190 ("Division of Property") in determining that the commissioner had fairly divided the PSC.

Moreover, on August 9, 2006, the family court found that the 1996 judgment was one "in equity for money (support arrearages, attorney fees, reimbursement, etc.) and in specific performance (division of marital assets)." It further found that the 1996 judgment required that Steven pay Roberta $40,000.00 "as a division of the medical practice."

Thus, the award of $40,000.00 can only be interpreted as Roberta's share of the medical practice, a marital asset, reduced to dollars. An award from the division of marital property is certainly a matter collateral to child or spousal support. As such, this amount cannot be garnished *via support order*, as the UIFSA does not provide for the collection of money awarded on collateral matters during a divorce.

## IV. *Conclusion*

For the foregoing reasons, the decision of the Court of Appeals is hereby reversed and this matter is remanded to the Jefferson County Family Court for proceedings consistent with this opinion.

All sitting. All concur.