IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 19, 2011 Session[1]

## ARAGORN LAFAYETTE EARLS
v.
## JILL ANDREA MENDOZA

**Appeal from the Chancery Court Madison County**
**No. 66176    James F. Butler, Chancellor**

_____

**No. W2010-01878-COA-R3-CV - Filed August 10, 2011**

_____

This appeal involves a post-divorce petition to modify a parenting plan. The parties divorced in Tennessee and agreed to a parenting plan that designated the mother as the primary residential parent of their two minor children. By the time the divorce decree was entered, both parties had moved to New York. Months later, the mother filed a petition in the Tennessee trial court seeking court approval to relocate with the minor children to Colorado. The mother also sought an increase in child support, and to recover a child support arrearage. The father objected and filed a cross-petition in the Tennessee trial court to be designated as the primary residential parent. After a hearing, the Tennessee trial court granted the mother's petition to relocate, increased the father's child support obligation, and assessed a child support arrearage against the father. The father appeals. We hold that, under the Uniform Child Custody Jurisdiction and Enforcement Act, the Tennessee trial court did not have subject matter jurisdiction to adjudicate the mother's petition to relocate or the father's petition to change the designation of primary residential parent. We also hold that, under the Uniform Interstate Family Support Act, the trial court did not have subject matter jurisdiction to adjudicate the mother's request for modification of child support. The trial court, however, retained jurisdiction to enforce the existing child support order. Therefore, we vacate the trial court's order insofar as it modified the parenting plan and child support.

_____

[1] At oral argument in this case, this Court, *sua sponte*, raised the issue of the trial court's subject matter jurisdiction. The parties were asked to submit briefs on the issue, and the Court considered the appeal after the supplemental briefs were filed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Vacated in Part, Affirmed in Part, and Remanded.**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Jeff Mueller, Jackson, Tennessee, for Plaintiff/Appellant, Aragorn Lafayette Earls.

Lewis L. Cobb & Laura M. Cobb, Jackson, Tennessee, for Defendant/Appellee, Jill Andrea Mendoza.

## OPINION

### FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellant Aragorn Lafayette Earls ("Father") and Defendant/Appellee Jill Andrea Mendoza ("Mother") were divorced in 2009 following approximately seven years of marriage. The parties are the parents of two minor children, born in 1996 and 2004.[2]

After the parties met, Father obtained a job with a large agribusiness company. In 2002, after Father was offered a promotion and a transfer to Mexico, the parties married and the family moved to Mexico. Mother gave birth to the parties' youngest child while they were living in Mexico.

After that, Father was transferred to Puerto Rico and the parties relocated again. Ultimately, Father was transferred to Jackson, Tennessee. The family moved to Jackson and Mother found employment there.

In 2009, while the family was living in Jackson, Father was offered a promotion and a transfer to Buffalo, New York. At around the same time, the parties decided to divorce. On May 11, 2009, Mother filed a *pro se* complaint for divorce. The parties executed a marital dissolution agreement in May 2009, which included an agreed permanent parenting plan designating Mother as the primary residential parent, and equally dividing the parenting time. The agreed parenting plan required Father to pay Mother child support in the amount of $638 per month.

---

[2]Mother gave birth to the oldest child before she met Father. After the parties married, Father adopted the child.

While the divorce was pending, Father accepted the promotion and relocated to Buffalo. Mother also relocated to Buffalo while the divorce was pending. Initially, she and the children lived with Father in his home in Buffalo.

The parties' divorce decree was entered by the Jackson, Tennessee trial court on August 10, 2009. At around the same time, Mother and the children moved out of Father's home in Buffalo and into a separate home in Buffalo. Mother searched for employment in Buffalo, with little success. The children enrolled in school in Buffalo.

Later in 2009, while visiting her family in Denver, Mother was offered a job with a company in Denver. It was an attractive offer and Mother wanted to accept it because it was the "best position" of employment offered her to date, and because it was near her extended family in Denver.

Accordingly, in early January 2010, Mother wrote Father a letter notifying him of her intent to relocate with the children to Denver. The letter outlined the reasons why Mother wanted to move to Denver, and informed Father that the start date for her new employment was February 1, 2010. Mother filed the letter with the Tennessee trial court on January 5, 2010.[3] Father did not file a response to Mother's letter at that time.

On February 1, 2010, Mother filed a motion with the Tennessee trial court seeking to have Father held in civil contempt for failure to pay child support and also seeking modification of child support. Mother averred that Father was in arrears on his child support obligation in the amount of $2854. Mother stated she gave up her job in Jackson, Tennessee in June 2009 to move to Buffalo, and that she remained unemployed despite efforts to find reasonable employment in Buffalo. In contrast, Mother asserted, Father had received a salary increase. Accordingly, Mother asked the trial court to hold Father in willful contempt for failure to pay the amount of child support in the agreed parenting plan, and to require him to pay his child support arrearage, plus interest. Mother also sought an increase in Father's child support obligation, and an award of attorney fees.

Two days later, on February 3, 2010, Mother filed a motion with the Tennessee trial court seeking leave of court to relocate to Denver, Colorado. In the motion, Mother claimed she actively sought employment in Buffalo without success, and described the job offer in Denver. Mother asserted that relocation to Denver was in the best interest of the children because her extended family was in Denver, Father's job required long work hours and

---

[3]The letter notifying the other spouse of intent to relocate is required under the parental relocation statutes. *See* T.C.A. § 36-6-108(a).

frequent travel, and Father frequently relocated for his job. Mother argued that moving to Denver would give the parties' children needed stability.[4] Mother sought an order permitting her relocation to Denver, and an award of attorney fees.

In response to Mother's motion to hold him in contempt for failure to pay child support, Father asserted that he had agreed to pay only $150 per month in child support and claimed that Mother had altered the parenting plan filed with the court. He also contended that Mother was willfully unemployed.

Father also filed a response to Mother's motion to relocate, in which he opposed her relocation with the children. He denied that his job required excessive travel or frequent moves, and asserted that any perceived advantages to Mother's move to Denver would be outweighed by the disruption of the children's relationship with him.

Finally, Father filed a motion to modify custody. Father averred that there was a change of circumstances that warranted a change of custody. Specifically, he claimed that Mother was abusive to the children and that he should be designated as the primary residential parent. Mother filed a response, denying Father's allegations and opposing his motion to modify custody.

The trial court held an evidentiary hearing on the parties' motions. The hearing was held over the course of three days, on March 12, 15 and 16, 2010. Several witnesses testified, all of whom traveled considerable distances to the Jackson, Tennessee courtroom.[5] The trial court heard testimony from Mother's mother and sister, both in Denver, the parties' oldest child, who traveled with Father from New York, and from Father[6] and Mother.[7]

Mother's family members testified in support of her relocation to Denver. The parties' oldest child testified about his relationship with his parents.

---

[4]Mother's motion also noted that the biological father of the parties' oldest child lived in Denver, and that the child had been in contact with his biological father.

[5]The trial court also received into evidence the telephone deposition of a manager with Father's employer, located in Kansas.

[6]Apparently Father traveled to Jackson from New York with both sons, although only the oldest son appeared at the hearing.

[7]It was unclear whether Mother traveled to Jackson from Denver or New York. Some of her testimony referred in the present tense to "loving" her new Denver job, indicating that she had already taken the position.

Mother testified about her interactions with Father, her parenting of the parties' children, and disciplinary problems relating to the oldest child. Despite her difficulties with Father, Mother said, she followed Father to Buffalo while their divorce was pending. In June 2009, Mother ended her employment in Jackson, Tennessee, and sold their Jackson, Tennessee home.[8] She moved with the children to Buffalo the third week of June 2009. In fact, she and the children initially moved into Father's home in Buffalo. In August 2009, Mother and the children moved into separate housing in Buffalo; at that point, Father began paying Mother child support of $100 per month.[9] Mother testified about her efforts to find appropriate employment in Buffalo and expressed surprise at her lack of success. She described the job she was offered in Denver and the advantages to both her and the parties' children of relocating to Denver near her extended family.

Mother additionally testified that, based on the amount of child support in the existing parenting plan, Father was in arrears on his child support payments. She stated that the children were spending approximately 61% of their time with her, and the remaining 39% with Father.

Father testified as well. He expressed concern about the children relocating with Mother because, he claimed, Mother had consistently been abusive to both children, and to Father as well. Father testified about the disciplinary issues surrounding their oldest son, and expressed his opinion that the oldest child responded well to the structure and discipline that Father provided in his home. For these reasons, Father asked the trial court to designate him as the primary residential parent.

On the monetary issues, Father testified that, in the negotiations preceding the execution of the parties' agreed parenting plan, he was adamant that he would pay Mother no more than $150 per month in child support for both children, despite the $638 per month figure in the executed plan. He testified that his 2009 base salary was approximately $100,000 per year, and his base salary in 2010 was approximately $110,000 per year. Father claimed that he was unwilling to pay Mother more than $150 per month in child support because of his concern that Mother would misuse the money. Instead, he said, "I would rather just pay for the kids and give them what they needed." Father claimed that he was not in arrears on his child support, based on the figure of $150 per month.

---

[8]The closing was in July 2009.

[9]Father paid directly for some items such as day care and some rent for Mother. The parties disputed whether these payments should be considered child support or payments related to the parties' property division.

On March 23, 2010, the trial court issued a letter ruling outlining its findings of fact and conclusions of law. The trial court denied Father's motion to modify custody, finding that Father's concerns about Mother's parenting had been present prior to the divorce, and so were not a change in circumstances. The trial court granted Mother's motion for leave of court to relocate to Denver with the children, finding that the move to Denver had a reasonable purpose. The trial court adjudged Father in civil contempt of court and in arrears on his child support obligation in the amount of $2888, including interest, and ordered Father to pay the arrearage within ten days. The trial court reserved the question of whether Father's child support would be increased, in order to obtain additional financial information. Mother was awarded attorney fees for her petition to recover the child support arrearage, her motion to relocate, and for her defense of Father's motion to modify custody.

On April 6, 2010, the trial court entered orders on the parties' motions, incorporating by reference its letter ruling. On August 11, 2010, a modified permanent parenting plan order was entered as well.[10] Under the revised parenting plan, Mother remained the primary residential parent, and the parties' parenting time was adjusted in light of Mother's move to Denver. Father's child support was increased to $1556 per month. Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father argues that the trial court erred in declining to modify the parenting plan to designate him as the primary residential parent for the parties' minor children. Father also argues that the trial court erred in granting Mother's motion to relocate to Denver, Colorado. In the Argument portion of his brief,[11] Father also asks this Court to reverse the award of attorney fees to Mother and the modified parenting plan as well.

Mother argues on appeal that the trial court correctly denied Father's motion to modify custody, and correctly granted Mother's motion to relocate. Mother also maintains that the award of attorney fees was not in error, and that the trial court appropriately modified the parties' parenting plan.

---

[10]On December 20, 2010, after the notice of appeal was filed, the same parenting plan was re-entered by the trial court, with a minor technical correction.

[11]The Court notes that the issues presented on appeal are required to be set out separately in the "Issues" section of the appellate brief, with the argument on each of the issues contained in the "Argument" section of the brief. *See* TENN. R. APP. P. 27(a). The Court is under no obligation to consider issues not properly presented in the appellate brief.

At oral argument in this case, this Court *sua sponte* raised the issue of the trial court's subject matter jurisdiction, based on indications in the record that, by the time the order of divorce was entered, both parents and the children had moved to New York. Counsel for the parties were directed to file supplemental briefs on this issue. In the supplemental briefs, Father argues that, under the Uniform Child Custody Jurisdiction and Enforcement Act, Tennessee Code Annotated §§ 36-6-201 *et seq.,* the trial court did not have jurisdiction to hear either Mother's motion to relocate or Father's petition to modify custody. He argues that under the Uniform Interstate Family Support Act, Tennessee Code Annotated, §§ 36-5-2201, *et seq*., the trial court did not have jurisdiction to hear Mother's motion to increase his child support. In her supplemental brief, Mother contends that the trial court retained continuing jurisdiction over the entire case.

Rule 13(b) of the Tennessee Rules of Appellate Procedure provides that appellate review "generally will extend only to those issues presented for review." It adds, however, that the appellate court is to "also consider whether the trial court and the appellate court have jurisdiction over the subject matter, whether or not presented for review." TENN. R. APP. P. 13(b). Whether a court has jurisdiction is a question of law, and thus, on appeal, the issue is reviewed *de novo* with no presumption of correctness of the ruling of the lower court. ***McQuade v. McQuade***, No. M2010-00069-COA-R3-CV, 2010 WL 4940386 at *4 (Tenn. Ct. App. Nov. 30, 2010) (citing ***Button v. Waite***, 208 S.W.3d 366, 369 (Tenn. 2006)).

As to the substantive issues raised, the trial court's factual findings are reviewed on appeal with a presumption of correctness, unless the evidence preponderates to the contrary. ***See*** TENN. R. APP. P. 13(d). The trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness. ***See Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000).

## ANALYSIS

### *Child Support Arrearage*

At the outset, we note that Father does not appeal the trial court's order finding that he was in civil contempt for failing to pay the amount of child support mandated under the original parenting plan, and requiring him to pay the arrearage plus statutory interest. Moreover, regardless of whether the trial court had jurisdiction to modify either custody or child support, its original child support order remained valid and enforceable. ***See*** T.C.A. § 36-5-2205 cmt. (2005)[12] ("[T]he original order of the issuing tribunal remains valid and

---

[12]The most recent bound volume of the Tennessee Code Annotated contains a version of this statute not yet

(continued...)

-7-

enforceable . . . even after the issuing state has lost its power to modify its order . . . .  The original order remains in effect until it is properly modified . . . .”); *McQuade*, 2010 WL 4940386, at *11.  For these reasons, we do not address in this appeal whether the trial court erred in requiring Father to pay the child support arrearage under the original parenting plan.

### *Subject Matter Jurisdiction*

We go on to consider the trial court’s jurisdiction over the remaining issues. Subject matter jurisdiction implicates a court’s power to adjudicate a particular case or controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004) (citing *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000)) .  In the absence of subject matter jurisdiction, a court cannot enter a valid, enforceable order.  *Brown v. Brown*, 198 Tenn. 600, 281 S.W.2d 492, 497 (Tenn. 1955).  Therefore, subject matter jurisdiction may be raised at any time by the parties or by the appellate court, *sua sponte* on appeal.  *County of Shelby v. City of Memphis*, 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963); *McQuade*, 2010 WL 4940386, at *4.  When subject matter jurisdiction is questioned, the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred on it the power to adjudicate the case before it. *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006); *McQuade*, 2010 WL 4940386, at *4.

To address the subject matter jurisdiction of the trial court to adjudicate the issues in this case, we must briefly review the procedural posture of the case.  In May 2009, the complaint for divorce was filed, and the parties executed a marital dissolution agreement and agreed on a permanent parenting plan.  After Father moved to Buffalo, New York for his job, in June 2009, Mother terminated her employment in Jackson, Tennessee, and sold the parties’ Jackson, Tennessee home.  The third week in June 2009, Mother and the children moved to

---

[12](...continued)
in effect.  Accordingly, in this Opinion, we cite the date of the most recent bound volume containing the version of the statute currently in effect.

Buffalo, New York.[13]   The divorce decree was entered by the trial court in Jackson, Tennessee on August 10, 2009, including the agreed permanent parenting plan.

Pursuant to the parental relocation statutes, on January 2, 2010, Mother wrote Father a letter notifying him of her intention to relocate, and filed the letter with the Tennessee trial court on January 5, 2010.  On February 1, 2010, Mother filed a motion for contempt and to modify child support with the Tennessee trial court.  On February 3, 2010, Mother filed her motion to relocate with the Tennessee trial court.  This was followed by Father's motion to modify custody.  The hearing on all of the motions was held by the trial court in Jackson, Tennessee in March 2010, and the orders on the motions were entered in April 2010.  On August 11, 2010, the trial court entered a revised permanent parenting plan that included an increase in Father's child support.

### *Jurisdiction as to Modification of Primary Residential Parent Designation and Parenting Schedule*

Where the parties and the children at issue all live outside Tennessee, and a Tennessee trial court adjudicates the custody of the children, Tennessee's Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), § 36-6-201 *et seq.,* is implicated.  "The provisions of the UCCJEA. . . address the issue of subject matter jurisdiction." JANET L. RICHARDS, 155 RICHARDS ON TENNESSEE FAMILY LAW § 7-3(b) (3d ed. 2011).  The UCCJEA governs initial child custody determinations as well as proceedings to modify custody.  It details the circumstances under which a Tennessee trial court has jurisdiction to make an initial custody determination.  T.C.A. § 36-6-216 (2010).  It also sets forth the circumstances under which a Tennessee trial court that has already made a child custody determination has jurisdiction to modify that determination.  T.C.A. § 36-6-217 (2010).

---

[13]In her supplemental brief on subject matter jurisdiction, Mother's counsel acknowledges that both parties had moved to Buffalo, New York by the time the divorce decree was entered on August 10, 2009.  Mother's counsel asserts that "the record does not state exactly what date that move took place" and that "[t]hrough three days of testimony, no witness or party specifically stated a date upon which the parties left Tennessee or began residing in New York." (Brief at 7, 11.)  While these assertions may be technically true, in that the exact day is not specified in the record, we note that Mother testified repeatedly that she moved from Jackson to Buffalo in June 2009 (See Vol. 3 at 104, 137) ("Q: . . . . And you left in June?  A: We did."); (Vol. 4 at 207) ("Q: Got there [Buffalo] in June of last year?  A: Yes."), and even specifies that they moved to Buffalo "about the third week of June."  (Vol. 4 at 257.)

Section 36-6-605 defines "child custody determination" as follows:

> "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. "Child custody determination" includes a permanent temporary, initial, and modification order. "Child custody determination" does not include an order relating to child support or other monetary obligation of an individual.

T.C.A. § 36-6-205(3) (2010). The term "modification" is defined as well:

> "Modification" means a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination.

T.C.A. § 36-6-205(11) (2010). In the case at bar, for purposes of the UCCJEA, the Tennessee divorce decree adopting the original permanent parenting plan order, entered on August 10, 2009, is the "initial" custody determination. The orders on relocation and on Father's motion to modify custody, entered on April 6, 2010, and the August 11, 2010 order adopting the revised permanent parenting plan, are modifications of the initial custody determination.

Under T.C.A. § 36-6-217(a), if a Tennessee court has properly made an initial determination of custody, that Tennessee court has exclusive, continuing jurisdiction to modify its determination until the occurrence of one of the following events:

> (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

-10-

T.C.A. § 36-6-217(a)(1)-(2) (2010). Thus, if either of these events occurs, the Tennessee court loses its exclusive, continuing jurisdiction.[14]

In this case, by the time the trial court made the initial custody determination on August 20, 2009, the parties had been absent from Tennessee for over a month. Tennessee Code Annotated § 36-6-216(a)(1) (2010) provides that a Tennessee trial court has jurisdiction to make an initial custody determination "only if [Tennessee] is the home state of the child on the date of the commencement of the proceeding."[15] The term "home state" is statutorily defined as "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." T.C.A. § 36-6-205(7) (2010). Here, the "commencement of the [initial] child custody proceeding" was the filing of Mother's divorce complaint in May 2009. *See McQuade*, 2010 WL 49490386, at *7 n.10. On that date, Mother and both children were still living in Jackson, Tennessee, and thus Tennessee was the children's "home state" at that time. Consequently, the Tennessee trial court had jurisdiction and properly made the initial custody determination on August 10, 2009. *Id.* at *6, n.7.

We turn, then, to whether the Tennessee trial court retained continuing, exclusive jurisdiction to modify its initial custody determination. In the proceedings below, the issue of the trial court's jurisdiction was neither raised by the parties nor addressed by the trial court. Nevertheless, under TENN. R. APP. P. 13(b), we are obliged to do so. We review the trial court's factual findings and the record in light of the applicable statutes.

With respect to subsection (1) of T.C.A. § 36-6-217(a), the trial court did not make a finding that neither the parties nor the children had a significant connection to Tennessee, although

---

[14]*In McQuade*, the Court stated the following:

> The UCCJEA establishes a clear jurisdictional hierarchy to decide which court will have power to decide child custody and visitation cases. ". . .[A]t the top of the hierarchy is a court with exclusive continuing jurisdiction. If a court has entered a valid custody order. . . and if the parties or the child continues to live in the state, that court has the exclusive right to decide if the order should be. . . modified. . ., called a "right of first refusal." *McQuad*e, 2010 WL 4940386, at *7, fn.8, (quoting *Cliburn v. Bergeron*, No. M2002-01386-COA-R3-CV, 2002 WL 31890868, at *8 (Tenn. Ct. App. Dec. 31, 2002; quoting MATTHEW BENDER & CO., INC., *Modern Child Custody Practice* § 3-109-12 (2000)).

[15]A Tennessee trial court would also have jurisdiction to make an initial custody determination if Tennessee "was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from [Tennessee] but a parent or person acting as a parent continues to live in [Tennessee]." This portion is not applicable in this case. T.C.A. § 216(a)(1) (2010).

the facts likely would have supported such a finding.[16]  Thus, the trial court did not lose its exclusive continuing jurisdiction pursuant to subsection (1).

Under subsection (2) of T.C.A. § 36-6-217(a), in its March 23, 2010 letter ruling, the trial court below alluded to the fact that both parents and the children were no longer residing in Tennessee.  The trial court did not, however, make a finding on the date the parties moved outside Tennessee.

In *Arendale v. Arendale*, No. W2005-02755-COA-R3-CV, 2008 WL 481943 (Tenn. Ct. App. Feb. 22, 2008) (*perm. app. den'd.*), to determine whether the trial court had subject matter jurisdiction to hear the father's petition to modify custody, the appellate court reviewed the evidence in the record to determine whether the parties had moved from Tennessee prior to the filing of the father's petition, and, if so, when they moved.  *Id*.  Pursuant to T.C.A. § 36-6-217(a)(2), the appellate court reviewed the record and the trial court's factual finding that the mother continued to reside in Tennessee.  It concluded:

> We think the preponderance of the evidence clearly shows that both parties and the child had been residents of Mississippi since the mother and child moved in November 2002.  The father moved to Mississippi a year before that.  There is no proof that any of them have lived in Tennessee since that time.  The trial court, therefore, did not have the power to modify its prior custody order.

*Id*. at *4.  Thus, because both the parents and the child had moved from Tennessee over six months before the father filed his petition for a change of custody, the *Arendale* court found, under T.C.A. § 36-6-217(a)(2), that the trial court did not have subject matter jurisdiction to adjudicate the father's petition to modify custody.

A similar analysis was conducted in *McQuade*, cited *infra*.  In *McQuade*, as in the instant case, the parties moved from Tennessee prior to the entry of the final decree of divorce by the Tennessee trial court.  *Id*. at *2.  Later, although neither the mother nor the father were residing in Tennessee, the mother filed a post-divorce petition in Tennessee to modify the parenting plan, including both the designation of the primary residential parent and her child support obligation.  *Id*.  The parties also filed other motions with the Tennessee trial court, including a motion filed by the father to relocate. *Id*.  The father asked the Tennessee trial court to dismiss the mother's motion for modification, asserting, *inter alia*, that the trial court lacked subject matter jurisdiction.  *Id* at *3.  The trial court acknowledged that both parents

---

[16]None of the witnesses at the March 2010 hearing resided in Tennessee.

had relocated outside Tennessee, but nevertheless held that it had continuing jurisdiction to adjudicate the parties' claims.

The Tennessee trial court held that there was no arrearage in the mother's child support payments. It modified the original parenting plan to revise the parenting schedule and the mother's child support obligation, but declined to designate the mother as the primary residential parent. The mother appealed. *Id.* at *3.

On appeal, the issue of the trial court's subject matter jurisdiction was raised *sua sponte*. *Id.* at *4. As in *Arendale*, to determine subject matter jurisdiction, the *McQuade* court reviewed the appellate record to ascertain the point at which neither parent resided in Tennessee. Although the appellate court could not determine the exact date the parties moved, references in the record showed clearly that, by the time the mother filed her petition to modify the parenting plan and her child support, both parents had been living outside Tennessee approximately eleven months. *Id.* at *8.

Under the UCCJEA definition of the term "home state," the *McQuade* court held that the date the mother filed her initial custody modification petition was "the commencement of the proceedings." *Id.* at *9 (citing T.C.A. § 36-6-205(7) (2005) definition of "home state" and *Button v. Waite*, 208 S.W.3d 366, 371 (Tenn. 2006)). Because both parents moved outside Tennessee more than six months before the mother's modification petition was filed, the *McQuade* court held that the trial court did not have subject matter jurisdiction to modify its original custody determination, under T.C.A. §§ 36-6-216 and 217. *Id.* at *8-10.

We now apply the *McQuade* analysis to the facts in this case. The pivotal date is the "commencement of the proceedings" under the statutory definition of "home state" in Section 36-6-205(7) (2010). Here, the proceedings commenced upon the filing of Mother's petition to relocate, filed on February 3, 2010.[17] Mother's sworn testimony in the trial court below was that she and the children moved approximately the third week in June 2009, and

---

[17]In her supplemental brief on subject matter jurisdiction, Mother argues that the proceedings in the trial court on custody commenced when Mother filed with her letter to Father informing him of her intent to relocate with the Tennessee trial court. We recognize that the letter is a statutorily-required predicate to Mother's petition for leave of court to relocate with the parties' children. *See* T.C.A. § 36-6-108(a) (2010). However, we think it is more appropriate to consider Mother's motion to relocate as the "commencement of the proceedings" under the definition of "home state," because that is the first pleading that asks the Tennessee trial court to act to modify its initial custody order. Under the facts of this case, however, the result would be the same even if we considered the letter to be the commencement of the proceedings. Mother's letter, dated January 2, 2010, was filed with the Tennessee trial court on January 5, 2010. The record shows that Mother moved by the end of June 2009, and that Father moved to Buffalo prior to Mother.

certainly no later than the end of that month. Under T.C.A. § 36-6-217(a)(2) (2010), neither the children nor the parents resided in Tennessee when Mother's petition to relocate was filed, so Tennessee no longer had "exclusive, continuing jurisdiction" over the "child-custody determination." *McQuade*, 2010 WL 4940386, at *8.

As set forth in *McQuade*, under T.C.A. § 36-6-217(b) (2010), even if a Tennessee trial court that has made a custody determination does not have continuing exclusive jurisdiction, it may nevertheless modify the existing custody order "*if it has jurisdiction to make an initial determination under § 36-6-216.*" T.C.A. § 36-6-217(b) (2010) (emphasis added); *McQuade*, 2010 WL 4940386, at *8. Therefore, even in the absence of exclusive, continuing jurisdiction, under T.C.A. § 36-6-217(b), the trial court below could modify its prior custody determination if it had jurisdiction to make an initial custody determination. Consequently, we must look to the UCCJEA provisions on jurisdiction to make an initial custody determination.

As set forth in *McQuade*, T.C.A. § 36-6-217(a) (2010) governs initial child custody determinations; it prioritizes the bases for the exercise of subject matter jurisdiction in such proceedings. *In re S.L.M.*, 207 S.W.3d 288, 298 (Tenn. Ct. App. 2006); *McQuade*, 2010 WL 4940386, at *8.[18] A court with "home state" jurisdiction as defined in T.C.A. § 36-6-216(a)(2) has first priority, followed by courts with "significant connection/substantial evidence" jurisdiction as defined in T.C.A. § 36-6-216(a)(2), courts with "convenient forum" jurisdiction as defined in T.C.A. § 36-6-216(a)(3), and courts with "vacuum" jurisdiction as defined in T.C.A. § 36-6-216(a)(4). *Id*.

> As to "home state" jurisdiction, Section 36-6-216(a)(1) states:
> Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial custody determination only if [Tennessee] is the home state of the child on the date of the commencement of the proceeding .
> . . .

T.C.A. § 36-6-216(a)(1) (2010). "Home state" is defined as "the state in which a child lived with a parent. . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." T.C.A. § 36-6-205(7) (2010). As set forth above, the record clearly shows that during the six-month period preceding the filing of

---

[18] *See also Cliburn*, 2002 WL 31890868 at *8 ("The order of preferred jurisdiction bases is: (1) continuing jurisdiction; (2) home state jurisdiction; (3) significant connection jurisdiction; (4) and jurisdiction when no other jurisdictional basis is available.") (quoting MATTHEW BENDER & CO., INC., *Modern Child Custody Practice* § 3-109-12 (2000)). *McQuade*, 2010 WL 4940386, at *8 n.11.

Mother's motion to relocate, both parents and the children were living in Buffalo, New York. Therefore, on the date of the commencement of the child custody modification proceedings, New York, not Tennessee, was the home state of the children. Consequently, the Tennessee trial court did not have jurisdiction under T.C.A. §§ 36-6-217(b) and 36-6-216(a)(1) (2010). Moreover, none of the provisions of T.C.A. § 36-6-216(a)(2) (2010) are applicable under the facts of this case.[19] Consequently, we must conclude that the trial court below was without jurisdiction to adjudicate either Mother's motion to relocate or Father's motion to modify custody.

Accordingly, we must vacate the trial court's orders insofar as they purport to modify the original parenting plan filed with the parties' divorce decree.

### *Jurisdiction as to Child Support*

In revising the parties' parenting plan to accommodate Mother's relocation to Denver, the Tennessee trial court also modified Father's child support obligation. Therefore, as in *McQuade*, we are obliged to consider whether the trial court had jurisdiction to do so.

The correlative to the UCCJEA is the Uniform Interstate Family Support Act ("UIFSA"), which governs interstate jurisdiction questions involving child support. *See* T.C.A. §§ 36-5-2201 et seq.; *McQuade*, 2010 WL 4940386, at *10; *Highfill v. Moody*, No. W2009-01715-COA-R3-CV, 2010 WL 2075698, at *6 (Tenn. Ct. App. May 25, 2010) (quoting *In re J.B.W.*, No. M2007-02541-COA-R9-CV, 2007 WL 4562885, at *1 (Tenn. Ct. App. Dec. 27,

---

[19]Under T.C.A. § 36-6-216(a)(2), a Tennessee trial court without home state jurisdiction may nevertheless make an initial custody determination if:

> A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:
>
> (A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>
> (B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

T.C.A. § 36-6-3216(a)(2)(A)-(B) (2010). Here, no New York court had declined to exercise jurisdiction. The evidence in the record contains no indication that either the parties or the children had a significant connection to Tennessee. Indeed, every witness in the Tennessee hearing came from out of the state. The other provisions of T.C.A. § 36-6-216(a)(3) and (a)(4) (2010) are likewise inapplicable.

-15-

2007)); *Young v. Godfrey*, No. M2007-02308-COA-R3-CV, 2008 WL 5330487, at *3 (Tenn. Ct. App. Dec. 19, 2006). The two uniform acts are consistent in many, but not all, respects, and so jurisdiction over child support must be analyzed separately from jurisdiction over custody and visitation. *McQuade*, 2010 WL 4940386, at *10; *Highfill,* 2010 WL 2075698 at *6-7.

Similar to the UCCJEA, the UIFSA defines "home state" as "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately preceding the time of filing of a petition or comparable pleading for support." T.C.A. § 36-5-2101(4) (2005). The "issuing state" is the state in which a court issues a support order, and the "issuing tribunal" is the court that issues the support order. T.C.A. § 36-5-2101(9), (10) (2005). *See also McQuade*, 2010 WL 4940386, at *10.

As with the UCCJEA, the UIFSA sets forth the parameters for a Tennessee court's "continuing, exclusive jurisdiction" over a child support order. Section 36-5-2205 provides:

> (a) A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child support order:
>
> (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
>
> (2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

T.C.A. § 36-5-2205(a)(1)-(2) (2005). The comments to this section of the UIFSA are instructive:

> This section is perhaps the most crucial provision in UIFSA. . . [T]he issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing State, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order- which in practical terms means that it may modify its order.

T.C.A. § 36-5-2205, cmt. (2005). Thus, the issuing tribunal retains exclusive jurisdiction to modify its order unless the narrowly defined exceptions apply. *McQuade*, 2010 WL

4940386, at *11. The official comments also draw the negative inference from the statutory language, to define when the issuing court loses its continuing, exclusive jurisdiction to modify its child support order:

> The other side of the coin follows logically. Just as subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also defines how jurisdiction to modify may be lost. That is, if all th relevant persons- the obligor, the individual obligee, and the child- have permanently left the issuing State, the issuing State no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that State have no reason to expend public funds on the process.

T.C.A. § 36-502205 cmt. (2005). Thus, the comments state that if all of the relevant persons, that is, the parents and the child, have moved away from the issuing state, the issuing court loses jurisdiction to modify its child support order. *McQuade*, 2010 WL 4490386, at *11. The comments note, however, that the initial child support order of the issuing tribunal remains valid and enforceable. T.C.A. § 36-5-2205, cmt. (2005).

As noted in *McQuade*, Section 36-5-2205 of the UIFSA was applied by the Tennessee Supreme Court in *LeTellier v. LeTellier*, 40 S.W.3d 490 (Tenn. 2001). In *LeTellier*, the Court was presented with the issue of whether a Tennessee court could modify a child support order issued by the District of Columbia; the mother and child had moved to Tennessee, and the father had moved to Virginia. *Id*. at 492. The *LeTellier* court stated specifically that it gave "substantial deference" to the official comments to the UIFSA. *Id*. at 493, n. 2. It found, under Section 36-5-2205(a)(1), that "the District of Columbia lost continuing exclusive jurisdiction" when the father, mother, and child were no longer D.C. residents, noting that D.C. no longer had "an appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." *Id*. at 493 (quoting T.C.A. § 36-5-2205, cmt.).

As noted in *McQuade*, courts of other states have addressed this situation, and virtually all have concluded that, once the parents and their minor children have left the issuing state, that state no longer has jurisdiction to modify its order. *McQuade*, 2010 WL 4940386, at *11, citing, *e.g., In re Marriage of Myers*, 30 Kan. App.2d 1223, 56 P.3d 1286, 1290-91 (Kan. App. 2002) (citing *Jurado v. Brasher*, 782 So.2d 575, 580 (La. 2001); *Cohen v. Powers*, 180 Or. App. 409, 416, 43 P.3d 1150 (Or. App. 2002); *In re B.O.G.*, 48 S.W.3d 312 (Tex. Civ. App. 2001)); *Gibson v. Gibson*, 211 S.W.3d 601, 608-09 (Ky. Ct. App. 2006).

In her supplemental brief, Mother notes the amendments to the UIFSA, approved by Tennessee's legislature in May 2010. *See* 2010 Pub. Act. Ch. 901 (approved May 2010); ***Vivien v. Campbell***, No. W2009-01602-COA-R3-JV, 2011 WL 1837777, at *5 n.11 (Tenn. Ct. App. May 10, 2011). In particular, Mother relies on the amendment providing that, even if the parents and the child have moved outside Tennessee, the Tennessee issuing tribunal maintains continuing, exclusive jurisdiction to modify its earlier child support order if "the parties consent in a record or in open court that the tribunal of this state [Tennessee] may continue to exercise jurisdiction to modify its order." T.C.A. § 36-5-2205(a)(2) (approved May 2010). Mother contends that the amendment "implies that . . . parents can continue to come to Tennessee to hear their support issues even after they have moved." Mother claims that "the parties consented to have the [Tennessee] Trial Court hear their custody issues," and so we should find that the trial court below had subject matter jurisdiction to modify its earlier child support order.

There are two problems with Mother's argument. First, the amendments to the UIFSA to which she refers were not in effect at the time the operative child support order was entered, *i.e.*, the revised permanent parenting plan entered in August 2010.[20] Second, even if the amendments to the UIFSA were applied to the case at bar, there is no indication in this appellate record that the parties "consent[ed] in a record or in open court" that the Tennessee trial court below could "continue to exercise jurisdiction to modify its order." In this case, the issue of subject matter jurisdiction simply did not arise in the trial court below; there was no mention of it by either the parties or the trial court. Silent acquiescence is not the equivalent of "consent in a record or in open court" to the trial court's exercise of continuing jurisdiction to modify the child support order contained in the original permanent parenting plan.

---

[20]2010 Pub. Act. Ch. 901 states only that it was "approved" by Tennessee's legislature in May 2010, and also contains the following note: "[Effective on date designated by the department of human services . . . .]" and refers to Compiler's notes, which state that the amendments:

> shall take effect as follows: As soon as possible after the United States deposits the instrument of ratification for The Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance, the department of human services shall file a notice with the secretary of state, who shall publish the notice in the Tennessee Administrative Register on the secretary of state's website, stating the date on which the instrument of ratification was deposited and the date designated by the department in the notice that this act takes effect; provided the effective date shall not exceed six (6) months from the date of such notice, the public welfare requiring it.

To ascertain when the United States Senate ratifies The Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance, *see* http://thomas.loc.gov/cgi-bin/ntquery/D?trtys:1:.temp/~trtys0AiKl3:: .

As in *McQuade*, the Jackson, Tennessee trial court lost the jurisdiction to modify its child support order once Mother, Father, and the children permanently moved from Tennessee. At that point, the Madison County trial court no longer had "an appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." *LeTellier,* 40 S.W.3d at 493 (quoting T.C.A. § 46-5-2205, cmt.).

Thus, the trial court below was without jurisdiction to modify its prior child support order at the time that it entered its revised permanent parenting plan in August 2010, increasing Father's child support obligation. Therefore, we are left with little choice but to vacate the revised permanent parenting plan insofar as it purports to modify Father's child support obligation.

### CONCLUSION

The trial court's April 6, 2010 orders on Father's motion for modification of custody and Mother's motion to relocate are vacated for lack of subject matter jurisdiction. The revised parenting plan entered on August 11, 2010 (and re-entered with technical correction on December 20, 2010) is vacated for lack of jurisdiction insofar as it modifies the parties' custody, parenting time schedule, and child support obligations. The April 6, 2010 order on Mother's motion for civil contempt remains in effect, as the Tennessee trial court retained jurisdiction to enforce its initial child support order. The trial court's award of attorney fees to Mother is affirmed insofar as it relates to Mother's efforts to enforce the initial child support order and collect any arrearage, and is vacated insofar as it relates to efforts to modify custody or child support.

This holding pretermits the issues raised by the parties on appeal.

The judgment of the trial court is vacated in part as set forth above, and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are taxed equally against both parties, Appellant Aragorn LaFayette Earls and Appellee Jill Andrea Mendoza, for which execution may issue if necessary.

 

_____
HOLLY M. KIRBY, JUDGE